MONREAN, Administratrix, Respondent, vs. EASTERN WISCONSIN RAILWAY & LIGHT COMPANY, Appellant.

*February 20—March 11, 1913.*

*Street railways: Killing of child by car: Negligence of motorman: Contributory negligence of parents: Burden of proof: Questions for jury.*

1. In an action for the death of a boy seventeen months old who was run over by an electric street car, the evidence—tending to show that the street was practically level and the view of its whole surface unobstructed; that the track was twenty feet from the sidewalk; that the headlight of the car cast a light by which objects fifty or sixty feet away and ten or twelve feet

outside of the rails could be clearly seen; that the car was running at a speed of six or seven miles an hour and could be stopped within thirty feet; and that the motorman did not see the boy until within fifteen feet of him, he being then about two feet from the track—is *held* sufficient to sustain a finding by the jury that the motorman did not use ordinary care in looking ahead.

2. When a child of such tender age is seen approaching a street railway track, the motorman's duty is to bring his car under perfect control so that he can stop instantly, or to stop instantly, in order to avert injury. He has no right to assume that such a child will keep away from the car or will use any care to protect itself from injury. *Tishacek v. Milwaukee E. R. & L. Co.* 110 Wis. 417, and *Holdridge v. Mendenhall*, 108 Wis. 1, distinguished.

3. The leaving of a child seventeen months old, by its mother, in a high-chair with the table lowered in front of it, in a room with several adult persons, while she stepped across the street to make a purchase, was not contributory negligence on her part as a matter of law, although the street was one on which there was much traffic and frequent electric cars and automobiles.

4. In such case negligence could not be attributed to the father of the child, who left the room before the mother and was not aware of and had no reason to anticipate her subsequent conduct or that of the child.

5. While the presence of a child of tender years upon a public street unattended may raise a *prima facie* presumption of negligence on the part of its custodian which, unexplained, would defeat a recovery, still the burden of proof of contributory negligence is not thereby shifted. Such burden in all cases and at all stages of the trial rests upon the defendant.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The plaintiff as administratrix of the estate of Leslie Monrean, deceased, seeks to recover damages for the death of her infant son, Leslie, alleged to have been wrongfully and negligently caused by the defendant. The deceased was a boy seventeen months old at the time of his death. He was left by his mother sitting in the kitchen on a child's high-chair, with the table down or in front of him, eating a bunch of grapes, while she stepped across the street to buy a can of

salmon for supper. Plaintiff's brother, Mrs. Barry, and Mr. Pixley were in the kitchen with the boy when plaintiff left for the store. The accident occurred about a quarter past 6 in the afternoon of October 13, 1910. The Monrean residence fronts upon West Scott street, along which the defendant's street railway runs. About three minutes after plaintiff left the house and as she was returning she was attracted by the stoppage of defendant's street car nearly in front of her residence and learned that her son was run over. He was first seen by the motorman when he was about two feet from the south rail of the street-car track and when the car was about fifteen feet from him. The place of the accident was upon West Scott street, Fond du Lac, about sixty feet west of its intersection with Doty street. The car was running east. The track was located on the Monrean, or south, side of the street, and its south rail was about twenty feet from the south sidewalk, and the northerly rail about sixty feet from the north sidewalk. That part of the street south of the track was not used by teams and cars, and weeds to the height of nearly a foot had grown up during the summer. The street was practically level. The Monreans had lived in the house they then occupied about two years and a half and knew that cars frequently passed.

The jury found (1) that the motorman did not use ordinary care in not dropping the fender of the car on seeing the child; (2) that such want of ordinary care was the proximate cause of the death of the child; (3) that the motorman did not use ordinary care in looking ahead on approaching the place of the accident; (4) that such want of ordinary care was the proximate cause of the child's death; (5) that the mother was free from contributory negligence; and (6) damages in the sum of $800.

Defendant's motions to change certain answers to the questions of the verdict and for judgment on the verdict as amended, and to set aside the verdict and for a new trial, were

each severally denied, and from a judgment for the plaintiff entered on the verdict the defendant appealed.

*T. L. Doyle,* for the appellant, on the question of contributory negligence, cited *Harrington v. B., A. & P. R. Co.* 37 Mont. 169, 95 Pac. 8; *Hartfield v. Roper,* 21 Wend. 615; *Prendegast v. N. Y. C. R. Co.* 58 N. Y. 652; *Albert v. Albany R. Co.* 5 App. Div. 544, 39 N. Y. Supp. 430, affirmed 154 N. Y. 780, 49 N. E. 1093; *Jeffersonville, M. & I. R. Co. v. Bowen,* 49 Ind. 154; *Wright v. M. & M. R. Co.* 4 Allen, 283; *Gibbons v. Williams,* 135 Mass. 333; *Holt v. S. P. R. Co.* 4 Idaho, 443, 40 Pac. 56; *St. Louis, I. M. & S. R. Co. v. Freeman,* 36 Ark. 41; *Del Rossi v. Cooney,* 208 Pa. St. 233, 57 Atl. 514; *Alabama G. S. R. Co. v. Dobbs,* 101 Ala. 219, 12 South. 770; *Grant v. Fitchburg,* 160 Mass. 16, 35 N. E. 84; *Cotter v. L. & B. R. Co.* 180 Mass. 145, 61 N. E. 818; *Apsey v. D., L. & N. R. Co.* 83 Mich. 432, 47 N. W. 319; *Weaver v. Iselin,* 161 Pa. St. 386, 29 Atl. 49; *Johnson v. R. C. P. R. Co.* 160 Pa. St. 647, 28 Atl. 1001; *Smith v. H., M. & F. P. R. Co.* 92 Pa. St. 450; *McGee v. Wabash R. Co.* 214 Mo. 530, 114 S. W. 33.

*Maurice McKenna* and *M. K. Reilly,* for the respondent, upon the question of negligence of the motorman, cited *Slensby v. Milwaukee St. R. Co.* 95 Wis. 179, 70 N. W. 67; *Glettler v. Sheboygan L., P. & R. Co.* 130 Wis. 137, 109 N. W. 973; *Gould v. Merrill R. & L. Co.* 139 Wis. 433, 121 N. W. 161; *Van Salvellergh v. Green Bay T. Co.* 132 Wis. 166, 111 N. W. 120.

VINJE, J. On the merits defendant makes two contentions: First, that there is no evidence to show negligence on the part of the defendant, and second, that the parents of the child were guilty of contributory negligence. The jury found the defendant negligent in two respects: (a) in the failure of the motorman to drop the fender upon first discovering the child, and (b) in his failure to use ordinary care in

looking ahead, or in failing sooner to discover the child.   If either of these grounds of negligence is sustained, the plaintiff must prevail so far as defendant's negligence is concerned. Having reached the conclusion that the second ground of negligence is supported by the evidence, it becomes unnecessary to determine the first.

The street was practically level and the view of its whole surface was unobstructed.   True, there was a depression or slight ditch near the sidewalk, and some grass and weeds in the side of the street over which the child walked, but nothing to prevent its being seen after coming within range of the headlight.   The motorman testified that he could see objects clearly as far as thirty feet ahead, and that at that distance from the car the light shone five or six feet on each side of the rail.   On the part of the plaintiff there was evidence to the effect that the headlight on the car cast a sufficient light ahead to clearly see objects at a distance of sixty feet, and much farther than five or six feet from the rails.   In view of this evidence the jury was warranted in finding that the motorman was negligent in not seeing the child till within fifteen feet of him.   The child's progress towards the track must necessarily have been slow.   He was only seventeen months old, and though he learned to walk when about a year old, it is common knowledge that children of his age scarcely do more than toddle.   The car was proceeding at a speed of from six to seven miles an hour, and was stopped within thirty feet according to the motorman's testimony.   Had the motorman looked ahead within the zone of light he could, according to his own testimony, have seen the child thirty feet away and could have stopped the car before reaching it or before it reached the track.   According to the testimony of the plaintiff he could have seen it fifty or sixty feet ahead and have had ample time in which to stop.   If at thirty feet the light was cast five or six feet outside the rails, at sixty feet it would be cast about twice that far.   It is incredible that the

child could have proceeded more than eight feet towards the track while the car moved forty-five feet, the evidence being that the child was two feet from the rail when the car was fifteen feet from it, so it must have been within the zone of light when the car was sixty feet from it. At a rate of six miles per hour it would require about five seconds for the car to cover forty-five feet. It would certainly require that length of time for the child to toddle eight or ten feet.

The argument is made, inferentially at least, that no duty devolved upon the motorman to stop the car even if he had discovered the child sooner, and the cases of *Tishacek v. Milwaukee E. R. & L. Co.* 110 Wis. 417, 85 N. W. 971, and *Holdridge v. Mendenhall,* 108 Wis. 1, 83 N. W. 1109, are cited in support thereof. In the first case the child was five years old and in the last case about six. The latter was playing upon the street and suddenly darted in front of the car. The former was crossing the street, stopped when about three or four feet from the track, looked at the car, and then, suddenly, when the car was only about six feet from the crossing, started to walk across in front of the car. In each of those cases the motorman was held not negligent. But those were cases in which the children were old enough to see and appreciate the danger and the motorman could not be held to have reasonably anticipated such sudden and unexpected action on their part. Quite a different situation presents itself when a child only seventeen months old is seen approaching the track. In such case the duty devolves upon the motorman to bring his car under perfect control, so that he can stop instantly, or to stop instantly, in order to avert injury. For such a child is obviously unaware of danger and practically incapable of avoiding it. The motorman has no right to assume that it will keep away from the car or use any care to protect itself from injury from an approaching car.

The claim that the parents of the child were guilty of contributory negligence is based upon the evidence that they

knew there was a great deal of traffic on Scott street, including street cars, interurban cars, wagons, automobiles, and other vehicles; that the mother had been in the habit of taking the deceased boy with her to the grocery store; that he was a strong, healthy boy and liked to go with his mother; that both her husband and Pixley were said to be much intoxicated; and that the mother did not ask any one to look after the boy while she was gone. It appears the mother had been to an oculist that afternoon, and that when she came home shortly before 6 o'clock she found the persons mentioned in the statement of facts present in her house drinking some beer; that a dispute arose between her and her husband, whereupon he said he was going upstairs, and left the room; that she then placed the boy in the high-chair, lowered the table thereof in front of him, gave him a bunch of grapes, and left the house, closing the screen door, to go across the street to buy a can of salmon; that there were in the room with the boy the three adult persons mentioned and her daughter, who was three and a half years old. The mother testified that to her knowledge he had never before gotten out of the high-chair alone, and the evidence does not disclose how he got out this time. Undoubtedly parents are bound to exercise ordinary care to protect their infant children from danger, and if they fail to do so their negligence in that respect defeats recovery. But we are unable to see any want of ordinary care in the conduct of the mother under the circumstances, much less to set aside the verdict of the jury, approved by the trial court, as not supported by any evidence. _ Prendegast v. N. Y. C. R. Co. 58 N. Y. 652. The duties of a mother in ordinary stations of life, and especially among laboring classes, are too manifold and imperative to permit of constant personal supervision even of her own infant child. It must at times be left by her momentarily, and when it is so left in the presence of several adult persons, as in this case, negligence cannot be successfully predicated upon such conduct. A

large number of cases from other states are cited by defendant to show negligence on the part of the mother or parents under various circumstances. Those cases are not very helpful, because of the difference in facts and circumstances between them and the case at bar. In our opinion the jury could well find from the evidence that the conduct of the mother measured up to the care that an ordinarily careful, prudent mother exercises under the same or similar circumstances.

It is also urged that the question of the contributory negligence of the father should have been submitted to the jury. It is undisputed that he left the room before the mother did, with the declared intention of going upstairs, and that he did not know the mother left the house or that the child left it. Under such circumstances he cannot be said to be guilty of negligence in the care of the child. The father is not negligent in leaving an infant child in the care and custody of the mother under circumstances similar to those here disclosed. And if not negligent in leaving the custody of the child to the mother, he cannot be said to be negligent as to subsequent conduct on her part or of the child, of which he is not aware and which he has no reason to anticipate.

Error is alleged because the court charged that the burden of proof to show contributory negligence on the part of the mother was upon the defendant. The argument, in the language of counsel, is "that under circumstances like the present case, where a helpless child of seventeen months is found in the nighttime in the public street or upon a street-car track unattended, that there arises the presumption of negligence on the part of the parents and custodians, and that in reference to these questions the presumption placed the burden of proof upon the parents to show that they were not guilty of contributory negligence. That while the general rule is that contributory negligence is a matter of defense and the burden is upon the defendant to establish it, that in this case it falls

within the exception to that rule. That where it appears from the testimony or proofs of the plaintiff that they have been guilty of contributory negligence, that then the burden of proof falls upon the plaintiff;" citing *Harrington v. B., A. & P. R. Co.* 37 Mont. 169, 95 Pac. 8; *Hartfield v. Roper,* 21 Wend. 615; *Prendegast v. N. Y. C. R. Co.* 58 N. Y. 652; *Albert v. Albany R. Co.* 5 App. Div. 544, 39 N. Y. Supp. 430; *Jeffersonville, M. & I. R. Co. v. Bowen,* 49 Ind. 154; *Wright v. M. & M. R. Co.* 4 Allen, 283; *Gibbons v. Williams,* 135 Mass. 333; *Holt v. S. & P. R. Co.* 4 Idaho, 443, 40 Pac. 56; *St. Louis, I. M. & S. R. Co. v. Freeman,* 36 Ark. 41; *Del Rossi v. Cooney,* 208 Pa. St. 233, 57 Atl. 514.

The above cases, in so far as they sustain defendant's contention at all, go no further than stating the doctrine that the presence of a child of tender years unattended upon a public street raises a *prima facie* presumption of negligence on the part of its custodian which, unexplained, may be sufficient to defeat recovery. The case of *Harrington v. B., A. & P. R. Co.* 37 Mont. 169, 95 Pac. 8, most relied upon by defendant, expressly repudiates a shifting of the burden of proof. In that case the trial court charged:

"Whenever the plaintiff's own case raises a presumption of negligence, the burden of proof is immediately upon him. In such case it devolves upon the plaintiff, as of course, to clear himself of the suspicion of negligence that he has himself created. He must make out his case in full, and where the circumstances attending the injury were such as to raise a presumption against him in respect to the exercise of due care, the law requires him to establish affirmatively his freedom from contributory fault."

Commenting upon this the supreme court says:

"We think it would be more accurate to say that whenever the plaintiff's own case presents evidence which, if unexplained, would make out *prima facie* contributory negligence on his part, there must be further evidence exculpating him, or he cannot recover. However, this is evidently what the court meant, and this doctrine has the support of practically all of the authorities."

In any negligence case a fact may be proved which, if unexplained, may show contributory negligence sufficient to defeat recovery.    But the proof of such fact does not shift the burden of showing contributory negligence from the defendant to the plaintiff.    Such burden always rests upon the defendant.    That it may be satisfied by plaintiff's proof or by an admitted fact does not make it shift from one party to the other.    Frequently plaintiff's own evidence establishes contributory negligence, but that does not alter the rule as to the burden of proof.    If a *prima facie* case of contributory negligence is shown it may be explained or rebutted by either plaintiff's or defendant's evidence,. or both.    The burden, however, of establishing contributory negligence must in all cases and at all stages of the trial be held to rest upon the defendant.    It does not shift from one party to the other during the progress of the trial.

Several other errors assigned relating to instructions have been carefully examined.    They are found untenable and not of sufficient importance to merit separate treatment.

*By the Court.*—Judgment affirmed.