POTTER, Special Administrator, and others, Respondents, vs.
POTTER and others, Appellants.

*February 10—March 9, 1937.*

252

For the appellánts there was a brief by *Bundy, Beach & Holland* of Eau Claire, attorneys, and *Lines, Spooner & Quarles* of Milwaukee of counsel, and oral argument by *Charles B. Quarles.*

For the respondents there was a brief by *Wilcox, Wilcox & Sullivan* of Eau Claire, and oral argument by *Francis J. Wilcox.*

WICKHEM, J.  Plaintiff Thomas Potter is the father of defendant W. J. Potter.  Plaintiff Mildred Hovland is a sister of W. J. Potter.  Plaintiff Frank Hovland is her husband. Jennie M. Potter was defendant's mother.  On April 30, 1935, W. J. Potter took his sister, father, and mother for an automobile ride.  After riding for some distance in a southerly direction, defendant concluded that the road ahead looked bad and decided to turn around.  He proceeded to drive into a farmer's driveway upon his right and to back out onto the highway.  The driveway was flanked by an embankment that partly obstructed his vision.  He drove far enough into the driveway to enable him to see the road and then backed into the highway without looking again.  As his rear wheels were near the center of the road, his automobile was struck by a car driven by the defendant, R. C. Smith, who was traveling south on the same highway.  As a result, the father, mother, and sister sustained injuries.  The mother died from her injuries about two weeks later.  There was evidence that the Smith car was about one thousand feet to the north of the Potter automobile and in sight when the latter started to pull into the driveway.  There was also evidence that the Smith car was not in sight either when defendant Potter started to drive into the driveway or when he started to back onto the highway.

Defendants' first contention relates to the contributory negligence of the three guests, defendant Potter's father, sister, and mother.  Defendants contend that the record discloses as a matter of law, (1) that all of the guests were negligent with respect to lookout; (2) that their negligence in this respect contributed to their injuries; and (3) that this negligence was as great as or greater than that of the defendant. Closely related to this contention is the claim that the trial court should have submitted to the jury the question of the negligence of defendant's mother with respect to lookout.

A careful examination of the testimony raises some doubt whether there is any evidence to sustain the finding of the jury that the father and sister of defendant failed to keep a lookout. Both testified to the vaguest sort of recollections of the accident, and the most that can be made from their testimony is that they neither affirm nor deny that they kept a lookout. The sister did testify that as the car started into the driveway they were talking to each other on a subject unrelated to the driving of the car, but there is no evidence that this conversation continued down to the time of the collision. It is extremely doubtful whether such testimony raises a jury question in view of defendants' burden to establish contributory negligence, although in view of our conclusions with respect to cause, it is unnecessary further to consider this question. As to the mother, there is no evidence whatever as to what she did, and the presumption that she used due care for her safety operates in view of her death. See *Smith v. Green Bay*, 223 Wis. 427, 271 N. W. 28. The trial court correctly held that there was no issue for the jury with respect to her negligence. Assuming that there was a jury question with respect to the negligence of the father and sister, the jury could reasonably draw the inference that, in view of all the circumstances, the negligence was not a cause of the collision or of the injuries. Concededly, the car was driven into a driveway which had embankments on each side. The pitch of the driveway was quite steep, and the pitch was toward the road. This would mean that the opportunity for observation by the passengers would necessarily be somewhat, if not wholly, impaired. Under these circumstances, the jury could conclude that an effective observation could not be made until the last second or two before the accident and that the passengers would not have time to make such an observation and communicate their findings to the driver in time to avoid the collision.

It is next contended that the court erred in refusing to permit appellants to amend their motions after verdict. Judgment was entered July 1, 1936. On August 1, 1936, the trial court signed an order to show cause why the defendants should not be permitted to amend their motions after verdict for the purpose of requesting the court to change the answers to certain questions of the special verdict. After hearing arguments upon this order to show cause, the trial court denied the application on the ground that the matters requested were substantially covered by the motions of the defendants theretofore filed, and that the showing was not sufficient to show surprise or excusable neglect within the provisions of sec. 269.46, Stats. It is contended that sec. 252.10, which provides that "all judgments and court orders may be reviewed by the court at any time within sixty days from service of notice of entry thereof, but not later than sixty days after the end of the term of entry thereof," vested jurisdiction in the trial court to grant the relief and that relief need not be conditioned upon a finding of mistake, inadvertence, surprise, or excusable neglect, such as is required under sec. 269.46. We see no occasion for examining the merits of this contention. The original motions after verdict, and the memorandum decision of the trial court filed in response thereto, plainly indicate that the matters sought to be raised by defendants had been fully considered and disposed of. In view of this, it was well within the trial court's discretion under sec. 252.10 to decline further to review the judgment, and this is true even if defendants' contention as to the relation between the two sections be sound. As to this, we express no opinion.

The most important and troublesome question here involved arises out of defendants' claim that the cause of action based upon the conscious pain and suffering sustained in her lifetime by Jennie M. Potter should have been dismissed.

Jennie M. Potter lived for some two weeks after the accident, and had a cause of action at her death for pain and suffering. She died intestate, and W. J. Potter, one of the tort-feasors, was an heir.   It is contended that this circumstance requires dismissal of the cause of action or, at least, that so much of the recovery as would by the laws of descent come to defendant Potter as heir of the deceased be stricken from the judgment in order that a negligent tort-feasor may not have a benefit from his own wrong.   On this question there is a difference of opinion in the authorities, in respect to which see notes 23 A. L. R. 670, and 69 A. L. R. 481.   However, the weight of authority sanctions a distinction between actions which survive and statutory death actions.   It is generally held that with respect to actions which existed in favor of the deceased at the time of death, one whose negligent conduct was a cause of the injuries is not precluded from taking as an heir.   See A. L. R. notes, *supra*.   With respect to cases where the statute has created in certain specified beneficiaries a cause of action for death by wrongful act, it is generally held that the negligence of a statutory beneficiary bars his recovery. *Erikson v. Wisconsin Hydro-Electric Co.* 214 Wis. 614, 254 N. W. 106; *Matson v. Dane County,* 177 Wis. 649, 189 N. W. 154; *Kuchler v. Milwaukee E. R. & L. Co.* 157 Wis. 107, 146 N. W. 1133; *Monrean v. Eastern Wis. R. & L. Co.* 152 Wis. 618, 140 N. W. 309; *Parish v. Eden,* 62 Wis. 272, 22 N. W. 399; *Hoppe v. Chicago, M. & St. P. R. Co.* 61 Wis. 357, 21 N. W. 227.   The reason for the distinction is manifest.

In the case of survival of a cause of action for negligent tort we deal with an asset which was the property of decedent at death.   By hypothesis, there would have been no defense to it had decedent sued during her lifetime.   Being made to survive by the provisions of sec. 331.01, Stats., it goes to the administrator or executor who, when he sues upon it, occu-

pies the position of decedent against whom there is no defense. When realized upon, it becomes an ordinary asset to be distributed according to the terms of decedent's will, if there is one, or according to the laws of descent, if there is none. If the injury had been sued upon by the mother, and a judgment entered and paid during her lifetime, it could hardly be contended after her death that the negligent tortfeasor was disqualified to share her estate as heir or legatee, and the same principle operates where death precedes suit upon the cause of action. With respect to the death statute, the situation is quite different. The deceased never had a cause of action for her death, nor did any other person sustain an injury for which redress could be had under the rules of the common law. The cause of action for wrongful death was created in certain specified persons by secs. 331.03 and 331.04, Stats., and the persons selected were, generally speaking, those who sustained or presumably would sustain pecuniary or other special damages by her death. When one of the persons named as eligible to maintain an action under sec. 331.04 sues upon it, he is suing in his own right and not in that of the deceased and should obviously be subject to the defense that his negligence caused or contributed to the death out of which his pecuniary or other loss is claimed to flow. While perhaps not precisely in point, this principle is recognized in Restatement, Torts, § 493, comment *a*, in which it is said :

"There is a third type of death statute in which the amount recovered is treated as if it were an asset of the decedent and is distributed under special statutory provisions pertaining to that fund only. Under this type of statute, the negligence of a beneficiary has no effect in determining either the amount recoverable or the persons among whom the proceeds of the judgment are to be divided."

If the rule stated properly applies in the situation outlined in this comment, certainly it must apply with greater force

where the cause of action was actually an asset of deceased during her lifetime, where her administrator is suing upon it, and where the recovery will ultimately be distributed according to the general laws of descent.

It is next contended that the award to Thomas Potter of the sum of $2,500 for loss of society and companionship of his wife was excessive. The principal basis for this claim is that Thomas Potter was seventy-six years of age and had an expectancy of slightly less than six years. His wife was sixty-seven years of age, and the joint expectancy of the two parties is claimed to be less than five years. We do not regard the foregoing as a circumstance reasonably tending to show that the award was excessive. As heretofore held in *Cameron v. Union Automobile Ins. Co.* 210 Wis. 659, 246 N. W. 420, 247 N. W. 453, the statute (sec. 331.04 (2)) places a limit upon recovery, but does not constitute a measure of adequate compensation. The relation of the advanced age of the parties to the excessive quality of a verdict giving the statutory limit for loss of society and companionship is not apparent to us. If it has any relation, it would seem quite as reasonable that a man of seventy-six, deprived of the society of his wife, to whom he had been married for forty-five years, would be more seriously damaged, in view of the difficulties of forming new relationships, than had the death occurred earlier in life. We are dealing with a nonpecuniary item of damage, and there are very few yardsticks by which it may satisfactorily be measured. In view of the long period of their married life, and the fact that they had lived in harmony with each other for that period of time, taken in connection with the need of the aged plaintiff for comfort and companionship during his declining years, we cannot say that the amount of the award for loss of society is excessive.

Appellant calls attention to the fact that the judgment against the appellant, General Accident Fire & Life Assurance Corporation, Ltd., was erroneously entered for a sum in

excess of the policy limit. It is conceded by plaintiff that there was an error of computation in the judgment. The amount of this is $52. The judgment should be modified in this amount.

*By the Court.*—Judgment modified as indicated in the opinion and, as so modified, affirmed. Respondent to have costs upon this appeal.