SCHULZ, Administratrix, Respondent, vs. GENERAL CASU-
ALTY COMPANY OF WISCONSIN and others, Appellants.

*November 8—December 5, 1939.*

120

121

For the appellants General Casualty Company of Wisconsin, Jordan Lund, and John A. Laufenberg there was a brief by *Wilkie, Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *Lawrence E. Hart*.

For the appellant Middleton Farmers Co-operative Company there was a brief by *Hill, Beckwith & Harrington* of Madison, and oral argument by *D. V. W. Beckwith*.

For the respondent there was a brief by *Sanborn, Blake & Aberg, Ernest H. Pett*, and *Edwin Conrad*, all of Madison, and oral argument by *Mr. Pett* and *Mr. Conrad*.

FOWLER, J.   The foregoing states the material facts and the general issues.   The claims of the appellants may be briefly stated as follows : They contend that the judgment below should be reversed and dismissal of the complaint should be directed because, (1) Lund, the driver of the truck, as matter of law, was not guilty of any negligence under the undisputed evidence, and that if he was guilty of causal negligence, (2) the causal negligence of Schulz, the deceased driver of the Ford, as matter of law, was at least equal to that of Lund.   They also claim that if not entitled to dismissal of the action, they are entitled to a new trial because, (3) the finding of the jury that Schulz, the driver of the Ford, was not on his wrong side of the road is contrary to the undisputed evidence, and because the court erred, (4) in refusing instructions requested by the defendants, (5) in instructing

the jury, and (6) in permitting counsel for the plaintiff to state to the jury the maximum statutory allowance of damages for pecuniary loss and loss of society; and because (7) the verdict is perverse for awarding $1,000 damages for pain and suffering of the deceased. The defendant Co-operative Company also assigns as error, (8) that the finding of the jury that Lund was operating the truck as its agent is without support in the evidence.

(1) The claim that Lund was not guilty of negligence is without merit. By his own testimony he approached the top of a hill which obstructed his view at thirty-five miles per hour, and though he claimed that when he reached the top he was going only twenty-five miles per hour, the jury might properly infer that he was unable to stop his car within one half the distance he could see ahead, as sec. 85.40 (5), Stats., requires. By his own testimony he was driving in the traveled tracks in the middle of the road and thus was not keeping to the right of the center of the road as sec. 85.15 (1), Stats., requires, when he reached the top of the hill. Although he testified that on seeing the Ford he turned to the right and the front of his truck was at the outer edge of the shoulder when the collision occurred the jury might infer that its rear was still to the left of the center of the road. As to lookout and control, the case is not so clear, but we consider that the questions in this respect were also for determination by the jury under the circumstances in evidence.

(2) It appears from the evidence that as the cars approached the top of the hill the speed of the Ford was greater than the speed of the truck. It also appears, as we shall hereinafter show, that Schulz was equally guilty with Lund in driving in the middle of the road. But it appears that Schulz applied his brakes, and the jury might properly infer that he had brought his car nearly to a stop at the time of the impact. Lund did not apply his brakes. The jury might have properly inferred from this that Schulz's lookout and control were

both better than those of Lund. It might perhaps be properly held that the finding that the proportionate negligence of Lund was to that of Schulz as 90 to 10 cannot stand, and that a new trial on the question of comparative negligence should be directed on that ground if on no other, but as a new trial must be ordered on other grounds we need not concern ourselves with that. We consider that the question of comparative negligence was for the jury.

(3) We consider that the finding of the jury that Schulz did not drive on his left side of the road cannot be upheld. While some of the witnesses testify that the gouge in the road which marks the approximate position of the left front of the Ford at the moment of impact was a foot south of the center of the road, it cannot be held that it fixes the precise spot of the impact in view of three undisputed physical facts which conclusively show the contrary. No one saw the collision except Lund, who testified that the Ford "came straight down the traveled tracks." There is no direct evidence to the contrary. If the testimony of some of the appellants' witnesses as to the location of the gouge in the road could be accepted as fixing the precise location of the left front of the Ford at the moment of collision, this would inferentially contradict Lund's testimony. But it is undisputed that skid marks made by the Ford were in the middle of and straight with the beaten traveled tracks of the road. This fixes the Ford as traveling in those tracks. Photographs taken on the day of the collision plainly and conclusively show these traveled tracks and show them to be practically in the center of the road. Actual measurement made by the county surveyor fixes the center of the tracks as not more than four and a half inches south of the center of the graveled part of the road. These tracks and the skid marks are physical facts. There is no testimony disputing the testimony that the skid marks were in the traveled tracks and none disputing that they were in the center of those tracks and straight with them, nor is

there any testimony that these skid marks were not present or were not made by the Ford. Besides, these skid marks were fixed by a sketch made by the respondent's principal witness, Spahn, on the second day after the collision occurred. The collision occurred in front of Spahn's residence. Spahn heard the crash of the collision and immediately went to the place of the collision. The sketch shows the skid marks as in the middle of the traveled tracks and straight with them. In view of this we must hold that the physical facts demonstrate that the Ford was invading the truck's side of the road. Besides, the respondent's witness Spahn marked on his sketch the position of the gouge mark, and the sketch shows it, as expressed by him upon the trial, as starting "north of the center of the road" and extending "pretty nearly up to the north wheel track. That is just about a correct representation of where it was." This corroborates the testimony of respondent's witnesses who examined the skid marks while the vehicles were still where they came to rest. Spahn did say the gouge was south of the center of the road, but he said in immediate connection that "the gouge mark was between the two wheel tracks [of the road] but closer to the north wheel than to the south wheel tracks. It was about a foot off of the center of the road to the south." But this statement that the gouge mark was a foot off center to the south is in direct contradiction to the sketch made by the witness, which he testified correctly represented where the gouge mark was. We conclude that the finding of the jury that the Ford was on its own side of the road is contrary to physical facts shown by undisputed evidence. One of the grounds of the defendants' motion for a new trial was that a retrial should be ordered in the interest of justice. We consider that the motion should have been granted on this ground if on no other.

(4) The instruction requested was to the effect that the occurrence of the collision was not in itself evidence of negligence and did not raise a presumption that either party was

negligent. It should have been given, but refusal to give it could hardly have been prejudicial as it affected the conduct of both Lund and Schulz in the same way and to the same degree.

(5) (a) One instruction given by the court to which the appellants object is as follows:

"It is the duty of the driver as he is proceeding upon a public highway to keep a proper lookout for other persons who may be using the same highway, and it is the duty of the driver to have his vehicle in such condition and under such control that he may be able to take such precautions, if any be necessary, to avoid the accident."

This instruction bears on the duty of the drivers as to control covered by a question of the verdict submitted as to each driver; was he negligent in the operation of his car as to control? The instruction is obviously erroneous. The duty is not to have his car under such control as to enable him to avoid accident, but to use ordinary care to that end. In *Quinn v. Hartmann,* 210 Wis. 551, 552, 556, 246 N. W. 587, the question,—

"Did the defendant fail to have or keep his automobile under such control as to enable him, in the exercise of ordinary care, to stop in time to avoid the collision?"

was held erroneous. It was there said as to this question:

"The question as submitted places altogether too heavy a burden upon the defendant. Under the undisputed evidence the defendant did not stop in time to avoid the collision, so the jury, under the question as submitted, was necessarily compelled to find that the defendant's control of his automobile was such that, in the exercise of ordinary care, he could not stop in time to avoid the collision. The proper inquiry, under the circumstances of this case, was whether the defendant exercised ordinary care in the control of his automobile, and not whether he exercised such control as to enable him, in the exercise of ordinary care, to stop in time to avoid the collision."

The instruction of the court above quoted by inference covers lookout as well as control. Lookout is a precaution. If one must take such precautions as will enable him to avoid accident, he must keep such lookout as will enable him to do so. Neither driver had such control of his car, or kept such lookout, as enabled him to avoid accident. The instruction compelled the jury to find both drivers guilty of negligence as to both control and lookout. Both were convicted of negligence as to lookout, but Schulz was exonerated as to control while Lund was convicted as to control. The error of the court in putting the "too heavy a burden" upon both drivers and the error of the jury in applying the instructions as to one driver and not applying it to the other were prejudicial and requires a new trial of the case.

(b) Another instruction given by the court of which complaint is made, is to the effect that the court stated to the jury that the statutes limited the recovery for pecuniary loss to $12,500 and for loss of society to $2,500. Sec. 331.04, Stats. In *Hupfer v. National Distilling Co*. 127 Wis. 306, 313, 106 N. W. 831, a statement by the trial court in its charge to jury to the effect that the jury could not allow damages in excess of $5,000, when the existing statute so limited damages, was apparently considered erroneous. Stating the statutory limitation cannot aid the jury in fixing the amount of compensation, and reference to it should not be made. It is likely to give the jury the idea that they may allow the maximum however careful the court may be to state the measure of damages correctly. We do not mean to say that stating the statutory limitation necessarily requires reversal, but we fail to see how in any case such statement can aid the jury in determining the correct amount of compensation to be awarded. The statute does not measure the amount of compensation, it only limits it. *Cameron v. Union Automobile Ins. Co*. 210 Wis. 659, 668, 246 N. W. 420, 247 N. W. 453;

*Potter v. Potter,* 224 Wis. 251, 256, 259, 272 N. W. 34. If a jury exceeds the limit, the court can reduce the allowance to the statutory limit. Courts of other states are cited as holding mention of the statutory limit in death cases proper. *Streeter v. Humrichouse,* 261 Ill. App. 556; *Steger v. Meehan* (Mo.), 63 S. W. (2d) 109; *Koehler v. Wells,* 323 Mo. 892, 20 S. W. (2d) 31. If they do so hold, we are not bound by their holdings. We do not so consider it, although it is not prejudicial if the assessment of the jury is proper, measured by the correct standard.

(6) The point here raised is covered by what is said under (5) (b). If it was error for the court to give the statutory limitation in its charge to the jury it was certainly error for counsel to give it in addressing the jury. The purpose of counsel's statement was manifestly to enhance damages. If not, why mention the limitation? It is urged that the error of counsel in stating the limitation is aggravated by the statement of the court made when objection to counsel's statement was interposed that "the jury will understand that the jury is to fix the damages, based on the evidence, as to their estimate of what the damages should be. The jury will be guided by that standard alone." The claim here seems to be based on use by the court of the word "estimate" and the phrase "damages should be," instead of the word "judgment" and the phrase "damages are." This seems to us a captious criticism. The jury could not have been misled into construing the instruction to mean that they could disregard the statutory limitation, or as meaning anything else than that they should fix the damages according to their judgment.

(7) The claim that the verdict was perverse is based on the fact that the jury awarded $1,000 for pain and suffering of the deceased, who was rendered wholly unconscious by the collision and who died a few minutes afterward without regaining consciousness. The court struck the award from the verdict. This was proper. The question should not have

been submitted. As such question will not be submitted on the new trial rendered necessary by the other errors above mentioned there is no occasion for giving the point further attention.

(8) The contention made under this heading must be upheld. It is urged by respondent's counsel that the evidence submitted by them raises a presumption that Lund was the agent of the Co-operative Company, and that this presumption and their evidence sustains the finding of the jury that he was. The evidence of the appellants shows what the situation respecting Lund's driving of the truck actually was, and shows that Lund was the agent of the defendant Laufenberg. The fact being established, it is controlling and the presumption stated does not aid the respondent. There is not a word in the evidence that disputes either directly or by inference the testimony of Laufenberg and the president of the Co-operative Company as to the actual situation. Under that testimony Laufenberg was an independent contractor, not an employee of the Co-operative Company, and Lund was his employee, not an employee of the Co-operative Company. Respondent contends that the jury were not bound to believe these witnesses. We consider that they were. Their testimony was not inherently incredible, it was not impeached in any particular directly or by any circumstances. See *Zurn v. Whatley,* 213 Wis. 365, 370, 251 N. W. 435. The defendant Co-operative Company moved for dismissal of the complaint as to it at the close of the evidence. Its motion should have been granted. Unless the evidence on another trial is materially different from that upon the instant trial, no jury question as to agency will arise.

*By the Court.*—The judgment of the circuit court is reversed, and the record is remanded with directions to enter an order for a new trial, upon all the issues.