# DELORES RANGE, TRUSTEE FOR SURVIVING SPOUSE AND NEXT OF KIN OF MILTON J. RANGE, v. VAN BUSKIRK CONSTRUCTION COMPANY AND ANOTHER.

161 N. W. (2d) 645.

September 6, 1968—No. 40,708.

*C. Stanley McMahon,* for appellants.
*Streater, Murphy & Brosnahan,* for respondent.

PETERSON, JUSTICE.

Plaintiff trustee recovered damages in the amount of $32,500 in an action against defendants for death by wrongful act. Decedent, Milton J. Range, was fatally injured on the night of September 9, 1965, when struck on a public street in Winona, Minnesota, by a truck of defendant Van Buskirk Construction Company. The jury found that the truck

was negligently operated by defendant Wilmer E. Westling, its employee.[1] Defendants appeal from the order denying their post-trial motion for a new trial.

The principal issue presented is whether a plaintiff in an action for death by wrongful act should be permitted to plead and argue damages exceeding the maximum amount recoverable under Minn. St. 573.02, and whether the court should be required to instruct the jury as to such maximum amount. Defendants urge, further, that the amount of damages awarded plaintiff was excessive as a matter of law, due in large measure to the court's failure to limit the pleading and argument or to instruct the jury as to the maximum recoverable amount.

The complaint alleged that decedent's next of kin[2] sustained pecuniary loss of $75,000, and the ad damnum clause asked for that amount. Defendants made a pretrial motion to strike the ad damnum clause on the ground that it was "sham and false" to demand recovery in an amount exceeding the statutory limitation of $35,000. The motion was denied.

The issue was submitted to the jury on a special verdict. In his opening statement and final argument, plaintiff's counsel asked the jury for its verdict in the amount of $75,000. Defendants requested an instruction which would expressly state to the jury that they must, if they found plaintiff entitled to a recovery, "fix the amount of money, not to exceed $35,000, which will fairly compensate [her] for her pecuniary loss resulting from the death of Milton J. Range." The trial court refused to give that instruction or any instruction advising the jury of the statutory limit of recovery.

■ Whether or not the jury must be insulated from knowledge of

---

[1] No issue is raised concerning the jury's finding of such negligence, although defendants do contend that there was sufficient evidence of the surviving widow's contributory negligence for submission to the jury. We agree with the trial court's determination that there was not, and we think no purpose would be served by a recital of the evidence on this issue, acknowledged by defendants to be of secondary importance.

[2] Decedent left surviving his wife, who brought this action as trustee, and one son, Melvin, a married adult living apart. The jury found that the son suffered no compensable loss.

the maximum amount recoverable under Minn. St. 573.02, either by limiting the pleadings, the court's instructions, or both, is a question of first impression in this state. Persuasive argument has been made for both views. Minnesota Jury Instruction Guides, drafted by the Minnesota District Judges Association, suggests an instruction that the jury shall be advised of the maximum statutory amount of recovery. The practice under these guides, however, is not uniform. The guides were designed primarily for use in cases of general verdicts rather than special verdicts.[3] Where a special verdict is employed, the jury need be instructed only as to the elements it should consider in measuring the amount in dollars that would reasonably compensate the surviving spouse and next of kin for the damages suffered by reason of the decedent's death. The court, applying the law to the ultimate facts so found by the jury, then orders judgment accordingly and, of course, within the statutory limitation.

Pleading damages and arguing for damages in excess of the statutory amount, without the restraining influence of an instruction as to the maximum amount recoverable under the statute, may in some situations

---

[3] The preface to Minnesota Jury Instruction Guides, p. XIV, expressly noted the spirit in which they were drafted: "* * * [I]t was considered desirable that model or standard instructions should not be binding upon the Minnesota Supreme Court and that there should be complete freedom on the part of that Court to reverse a trial judge with respect to any of the instructions suggested herein. * * * [I]t was deemed appropriate that a trial lawyer should be at liberty to challenge the legal accuracy or the language of any particular instruction and to seek appellate review of a trial judge's use thereof.

"* * * [E]ven though they have been promulgated by the Minnesota District Judges Association, they are not binding upon trial judges. The instructions in this volume are merely guides or suggestions. They will no doubt have persuasive force, but they are conclusive as to no one."

An explanatory note further comments upon its use (p. XVIII): "These instructions are designed for use only where a general verdict or a general verdict with interrogatories is contemplated. They must be modified substantially when a special verdict is submitted to the jury." And, as a final pertinent observation concerning its authority (p. XIX): "The instruction guides contained in this volume are based on what the law of Minnesota is, not what it should be."

tend to induce verdicts which, considered in relation to verdicts in other cases where even greater loss has been sustained, appear to be inequitable. Where the recovered amounts in such comparative cases are at or near the statutory maximum, the inequity is perhaps most apparent. We think, however, that an instruction stating the statutory maximum amount of recovery may in some situations have the tendency to induce verdicts which are near the maximum amount because a jury may believe the legislature intended that the surviving next of kin should have such amount. The Supreme Court of Wisconsin had the latter consequence in mind in Schulz v. General Cas. Co. 233 Wis. 118, 127, 288 N. W. 803, 808, and held:

"* * * Stating the statutory limitation cannot aid the jury in fixing the amount of compensation, and reference to it should not be made. It is likely to give the jury the idea that they may allow the maximum however careful the court may be to state the measure of damages correctly. * * * The statute does not measure the amount of compensation, it only limits it."

The fact remains, moreover, that the jury may be assumed to be influenced by *proof* of damages and not by pleading and argument alone.

The greatest potential for inequity or excessiveness, under either view, is in the wide range open to the jury for finding loss of "society and companionship" as pecuniary loss. As this court said in Fussner v. Andert, 261 Minn. 347, 354, 358, 113 N. W. (2d) 355, 360, 362:

"* * * [C]ourts have been loath to scrutinize verdicts closely in an attempt to break them down to determine the actual money loss established. This is not only because such verdicts are by the very nature of the action speculative, but also because of the emotional factors involved * * *.

\* \* \* \* \*

"* * * It should be no secret to the bar or the courts that jurors have circumvented the test in order to provide substantial recoveries which they feel are equitable under the circumstances. Courts have sanctioned this practice by holding that such verdicts are not excessive. * * * [D]amages are awarded not only on the basis of contributions and such

services as the evidence may establish but for those additional elements of loss within the broad definition of society and companionship which include aid, advice, comfort, and protection which the survivor might reasonably expect from the decedent and which, while not having an easily determined market value, are fully justified since they are elements of loss for which money can supply a practical substitute."

Whether or not a jury should separately state how much of its verdict is attributable to the intangible loss of society and companionship and whether or not there should be a maximum pecuniary limit for that element of loss is a matter for the legislature and not this court.

The issue is ultimately resolved for us by the statute itself. Minn. St. 573.02, subd. 1, provides in part:

"When death is caused by the wrongful act or omission of any person or corporation, the trustee * * * may maintain an action therefor if the decedent might have maintained an action, had he lived, for an injury caused by such wrongful act or omission. * * * The *recovery* in such action is such an amount as the jury deems fair and just in reference to the pecuniary loss resulting from such death, shall not exceed $35,000, * * *." (Italics supplied.)

In 1951 the legislature amended Minn. St. 1949, § 573.02, subd. 1, substituting the word "recovery" for the word "damages." L. 1951, c. 697, § 1. A clear distinction exists between "damages" and "recovery," and the legislature is presumed to have used these distinctive words deliberately. We conclude, in view of this distinction, that there is no sound reason for now prohibiting the pleading and proof of whatever damages the surviving spouse or next of kin may have sustained by reason of the wrongful death. That being so, there is no sound reason why the trial court should not submit the issues on special verdict and without instructions as to the limitation upon the amount of recovery. We hold, therefore, that where the trial court submits the issues to a jury on special verdict in wrongful death actions, it should not instruct the jury as to the maximum recoverable amount under the statute.

■ Defendants contend that the award of $32,500 was excessive and, in argument, relate such excessiveness to the fact that "the Court per-

mitted pleading and argument for damages of $75,000." But for the trial court's omission of reference to the maximum recoverable amount, its instructions as to the elements to be considered in determining pecuniary loss were substantially those recommended in Minnesota Jury Instruction Guides, and defendants take no other exception to them.

Decedent and his wife were 59 and 58 years of age, respectively. They had been married for nearly 37 years and had lived in Winona all of their lives. Their marriage, as the jury could find, had been a happy and intimate relationship. They entertained friends in their home and went out together two or three nights a week, usually to a nearby tavern, where they there drank beer and played cards with friends. They owned their own home, and decedent was a handy man in painting and remodeling it, as well as in the usual chores of maintaining it according to the season. Because of a nervous rash, decedent's wife was unable to do the washing of the family dishes and clothes, so he did that too.

Decedent had been employed by Swift & Co. in Winona for 35 years. He worked on the shipping and loading dock, for which he received monthly wages of a little more than $500. Swift's plant was closed in March 1964 but, apparently because of his age, he was not eligible for transfer to any of its other plants. He instead received a severance payment of $1,700 and approximately 38 weeks of unemployment compensation. Under Swift's pension program decedent was entitled to a lifetime pension of $112.70 per month, less $9.65 for insurance premium deductions, but his widow was not eligible for pension benefits. The couple contemplated maintaining their previous level of family income from several sources. He intended to do other work, such as odd jobs, and had been painting a neighbor's garage on the day he was fatally injured. She was apparently an experienced seamstress and was undertaking to build a little business of dressmaking and tailoring work. He would have qualified for social security benefits at the age of 65, and she would be entitled to additional benefits at age 62. Decedent's physician, who had been the physician for Swift when he worked there, testified that decedent was in good health for a man of his age and that, but for two instances of surgery and relatively minor problems, he had not been absent from work "very much."

The manager for the Winona office of the Minnesota Employment Service testified that the unemployment rate in Winona was at its lowest level in his 30 years' experience and that there was a substantial local demand for persons with decedent's ability and work history, concluding that he could probably have obtained wages of $2 to $3 per hour. The same witness testified that the going rate for the kind of odd jobs decedent did around his home, which his widow would now have to hire others to do, were in the range of $2 to $2.50 per hour, although such unskilled jobs as shoveling sidewalks and mowing lawns would probably cost less.

It is difficult to ascertain any approximate value that the jury may have placed upon the various elements of pecuniary loss. Defendants' counsel acknowledged to the jury the economic loss of decedent's pension benefits and the special damages of hospital and funeral expenses; and, in argument here, defendants would concede that the jury could reasonably have fixed the sum of $17,000 for those elements, plus a reasonable amount for loss of society and companionship. Plaintiff's counsel, arguing the elements of economic loss in greater detail, urged the jury to fix these approximate amounts: For decedent's work, prior to the time he qualified for social security benefits, reduced by decedent's taxes and his own living expenses, $12,000; for his post-social security additional work, again so discounted and assuming a jury finding of an 18-year life expectancy, $10,000; and for the loss to the surviving spouse in hiring others to do home maintenance work and chores, $18,500. Defendants' counsel suggested no specific amount to the jury to compensate for the loss of society and companionship, but plaintiff's counsel argued that the loss of society and companionship had a pecuniary value not less than the economic loss.

Plaintiff's argument as to the pecuniary loss involved a generous application of imagination and speculation. The jury obviously discounted these claims substantially. Even though we are of the view that the jury was most generous in crediting as much as they did, we cannot conclude that the result is shocking or manifestly unjust. Although each counsel argued with vigor, there was no appeal to the jury's passion or prejudice. To order a new trial on the issue of damages alone would serve no practi-

cal purpose in view of the wide range open to the jury in fixing an amount for loss of society and companionship.[4]

Affirmed.

---

[4] Each case such as this must stand on its own facts, and this case is of no greater value as a precedent for future cases than past cases are for this. The verdict in this case comes to us with the approval of the experienced trial court, who stated: "So we have a jury, after a fair trial, says this woman has suffered $32,500 in damages. It is below the $35,000 limitation, and I can't think of any justification why she shouldn't be governed by that."