STATE of Minnesota, Respondent,

v.

Dwane David PETERSON, Appellant.

No. C7–02–487.

Supreme Court of Minnesota.

Jan. 22, 2004.

Michael F. Cromett, Assistant State Public Defender, Minneapolis, MN, for Dwane David Peterson.

Michael Hatch, State Attorney General, James B. Early, Office of the Attorney General, St. Paul, MN, Ross Arneson, Blue Earth County Attorney, Mankato, MN, for the State of Minnesota.

## OPINION

ANDERSON, RUSSELL A., Justice.

Appellant Dwane David Peterson was convicted of kidnapping and aggravated robbery, in violation of Minn.Stat. § 609.25, subd. 1 (2002) and Minn.Stat. § 609.245, subd. 1 (2002), and was sentenced by the trial court to consecutive prison terms of 78 and 48 months. The court of appeals affirmed the conviction against claims by Peterson that the failure to include instructions on the presumption of innocence, burden of proof and proof beyond a reasonable doubt in the final charge to the jury was reversible error. Concluding that the final charge given to the jury diluted the requirement that the state prove every element of a charged offense beyond a reasonable doubt and amounted to a denial of due process, we reverse and remand for new trial.

On July 19, 2001, as 78–year–old Robert Berg was getting into his car at the Mankato public library parking lot, Peterson approached and handed Berg a note that said "I have a gun, and I know how to use it." The handle of a gun, later identified as a pellet air gun, protruded from Peterson's waistband. Peterson told Berg to "shove over," got into the car and drove off.

While driving toward Minneapolis, Peterson stopped at a gas station in Jordan and as he was preparing to purchase gas at the pump, Berg escaped from the car and fled into the station. As Peterson approached the station "swinging" the gun, a station employee called 911. Peterson relinquished the gun once he entered the station and saw that the employee was talking to law enforcement authorities.

Police arrived shortly and arrested Peterson.

Peterson was charged by complaint in Blue Earth County with kidnapping, first-degree aggravated robbery, theft of a motor vehicle, second-degree assault, and terroristic threats. At trial, shortly after the jury panel was chosen and sworn, the court advised the jurors that he was going to give them "some instructions to assist [them] in [their] participation in the trial." The court then read to the jurors a series of instructions that included patterned instructions from Chapter 3 of the *Jury Instruction Guide* concerning the presumption of innocence and the definition of proof beyond a reasonable doubt. 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal,* CRIMJIG 3.02 and 3.03 (4th ed. 1999) ("Instructions to Jury at Close of Case").[1]

Midway through the instructions, the court asked the bailiff to provide each juror with a written copy of the court's remaining instructions in a document titled "State v. Dwane David Peterson: Law Regarding Charges." The court explained to the jury that the written copy of the remaining instructions related to the law applicable to the charges, were "preliminary in nature" and would likely be altered. The court said: "I'm going to read this document to you so that it's clearly stated on the record" and told the jurors to "follow along with me as I read it. You will not go ahead of me. That's one danger[.] * * * I want to make sure that we go through it together."

The court then completed its instructions by reading to the jury the document which consisted only of the statutory definitions of the offenses charged, the elements of each offense, instructions that each element must be proven beyond a reasonable doubt in order to return a guilty verdict, and additional instructions concerning questions on the guilty verdict forms.[2] While reading the instructions, the court discovered an error in the special interrogatory for the use of a firearm and asked the jurors to "pencil in" the correction. The court advised the jurors that they were receiving copies of the "Law Regarding Charges" document so that they could "explore" the language and issues during the trial. The court also told the jurors that the instructions were a "work in progress" and that any changes to the instructions would be addressed at

---

1. The CRIMJIGS are published by a committee of the Minnesota District Judges Association. The content of these guides does not control over statutory or case law. *See State v. Burrell,* 506 N.W.2d 34, 36 (Minn.App. 1993) (citing *Range v. Van Buskirk Constr. Co.,* 281 Minn. 312, 314 n. 3, 161 N.W.2d 645, 647 n. 3 (1968)). This court, however, recognizes the important role that the CRIMJIGS have in criminal jury trials, occasionally evaluating the language of the CRIMJIGS and recommending review by the Minnesota District Judges Association Committee on Criminal Jury Instruction Guides. *See State v. Ihle,* 640 N.W.2d 910, 917 n. 5 (Minn.2002); *State v. Johnson,* 310 N.W.2d 96, 97 (Minn.1981) (approving of CRIMJIG 7.08). The CRIMJIGS are divided into two parts. The first part is comprised of general instructions and the second part consists of specific crimes and the elements needed to prove these crimes. *See* Minn. Dist. Judges Ass'n, *supra* at XI. In the general instructions, the CRIMJIGS are further organized by those instructions that are to be given before the trial (Chapter 1), those that should be given during the trial (Chapter 2) and those that should be given at the close of case (Chapter 3). *See id.*

2. Each guilty verdict form included the question whether the offense was committed with a firearm, presumably because minimum sentences are mandated for certain offenses committed with a firearm. Minn.Stat. § 609.11, subd. 5 (2002).

the end of the trial.[3]

The "Law Regarding Charges" document that was distributed to the jury included a definition of a dangerous weapon that stated only that a firearm, whether loaded or unloaded, was a dangerous weapon. At the close of the state's case, the court amended the definition to add that a firearm, "even if temporarily inoperable," was a dangerous weapon, eliminating any defense aimed at casting doubt on the operability of the firearm. At the conclusion of the evidence, the court collected from the jury the "Law Regarding Charges" document.

Prior to closing arguments, the court proceeded with the final charge to the jurors. The court told the jurors that he was not going to repeat "everything said" previously but six copies of a document titled "Final Instruction to Jury Panel" would be made available during deliberations for "review" if the jurors "deem[ed] it necessary." Those instructions not repeated included the presumption of innocence and the definition of proof beyond a reasonable doubt, "and the other things" the court had orally instructed on before opening statements.

The court continued its final charge to the jury, returning to the jurors their individual copies of the "Law Regarding Charges" document, with changes the court had made. The court said that it was going to "go through those in some detail, because obviously, that's the crux of the issues here." The court read from the document the elements of the offenses and related definitions but for four of the six offenses did not instruct that each element must be proved beyond a reasonable doubt, stating instead, "And to find him

guilty you have to be convinced beyond a reasonable doubt, otherwise, he's not guilty." The court acknowledged having "second thoughts" about separating the definitions from the elements in the written instructions which required the court to retrieve relevant definitions from the back of the document while reading the elements to the jurors. After closing arguments, the court instructed the jurors as to the selection of a foreperson, the need for a unanimous verdict, and the deliberation process.

The jury found Peterson guilty as charged. The court entered judgments of conviction for one count of kidnapping and one count of first-degree aggravated robbery and imposed consecutive sentences of 78 months and 48 months. The court of appeals affirmed, concluding that although preliminary instructions were no substitute for essential instructions in the final charge, when viewed in their entirety, the instructions in this case were adequate. The court of appeals also concluded that the trial court's amendment to the dangerous weapon definition was not an abuse of discretion.

I.

The trial court, in the final charge to the jury, has an obligation to clearly instruct the jurors on exactly what it is that they must decide. *Rosillo v. State*, 278 N.W.2d 747, 749 (Minn.1979). These instructions must be given orally. Minn. R.Crim. P. 26.03, subd. 18(5) (the court "*shall state* all matters of law which are necessary for the jury's information in rendering a verdict and shall inform the jury that it is the exclusive judge of all questions of fact" (emphasis added)).

---

**3.** Outside of the presence of the jury, the prosecutor advised the court that the firearm question on the guilty verdict form was not appropriate for the offenses of theft of motor vehicle or that of making terroristic threats; the court agreed, and indicated that a correction would be made at the end of the trial.

Upon review, instructions are viewed in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores,* 418 N.W.2d 150, 155 (Minn.1988). Here, the court included instructions on reasonable doubt and presumption of innocence in the preliminary instructions given shortly after the jury was sworn but did not include those instructions in the final charge given orally after the close of evidence before the jury retired to deliberate; and the court failed to instruct the jury for four of the six offenses that each element must be proved beyond a reasonable doubt.

■ Preliminary instructions that inform jurors of their duty, the presumption of innocence, the burden of proof and other preliminary matters are aimed at aiding "the jury in comprehending the trial procedures and sequence to be followed." Minn. R.Crim. P. 26.03, subd. 4. Preliminary instructions, however, do not relieve the court of its obligation to fully inform the jurors of the applicable law at the close of the evidence. *United States v. Ruppel,* 666 F.2d 261, 274 (5th Cir.1982); *State v. Romanosky,* 176 Ariz. 118, 859 P.2d 741, 742 (1993); *Massey v. State,* 270 Ga. 76, 508 S.E.2d 149, 151 (1998). "Reading a complete set of instructions after the evidence ensures that the jury hears and considers all the applicable law before deliberations." *State v. Nelson,* 587 N.W.2d 439, 444 (S.D.1998); *see also State v. Norris,* 10 Kan.App.2d 397, 699 P.2d 585, 588 (1985) ("Instruction of the jury is one of the most fundamental duties of the court and it is only through their oral delivery

that the court can be assured that the jury has actually received all of the instructions."). While a verbatim copy of the written instructions delivered orally by the court may be taken to the jury room when the jury retires to deliberate, Minn. R.Crim. P. 26.03, subd. 18(4), in our view, such instructions are not intended to replace the oral delivery of instructions on "all matters of law which are necessary for the jury's information in rendering a verdict." Minn. R.Crim. P. 26.03, subd. 18(5).[4]

■ The presumption of innocence is a fundamental component of a fair trial under our criminal justice system. "One accused of crime has the right to have the jury take it to the jury room with them as the voice of the law." *Merrill v. United States,* 338 F.2d 763, 768 (5th Cir.1964) (quoting *Dodson v. United States,* 23 F.2d 401, 403 (4th Cir.1928)). The presumption of innocence is "that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' " *In re Winship,* 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The reasonable doubt standard of proof "provides concrete substance" for the presumption of innocence. *Id.* Accordingly, the Due Process Clause requires the state to prove every element of a charged offense beyond a reasonable doubt. *Id.* at 364, 90 S.Ct. 1068.

■ "It is critical that the moral force of the criminal law not be diluted by a standard of proof that leaves people in doubt whether innocent men are being

---

4. The Rules of Criminal Procedure permit the use of preliminary instructions that may also be given as to matters relating to burden of proof, presumption of innocence, the necessity of proof of guilt beyond a reasonable doubt, and the specific elements of any charge filed against the defendant. Minn. R.Crim. P. 26.03, subd. 4. The Rules also provide that

"preliminary instructions need not be repeated." Minn. R.Crim. P. 26.03, subd. 18(4). But we do not read Rule 26.03, subd. 18(4) as alleviating the court of its obligation to state "all matters of law which are necessary for the jury's information in rendering a verdict[.]" Minn. R.Crim. P. 26.03, subd. 18(5).

condemned." *Winship*, 397 U.S. at 364, 90 S.Ct. 1068; *see also State v. Tibbetts*, 281 N.W.2d 499, 500 (Minn.1979) (ordering a new trial when the jury instructions obscured and diluted the reasonable doubt standard). A constitutional defect in a jury instruction defining reasonable doubt requires automatic reversal of a conviction. *Sullivan v. Louisiana*, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Harmless error analysis is not possible in such a case because "the instructional error consists of a misdescription of the burden of proof, which vitiates *all* the jury's findings," leaving the reviewing court only to speculate on its own as to "what a reasonable jury would have done." *Id.*

Here, the final charge to the jury that was delivered orally included neither the presumption of innocence nor the definition of proof beyond a reasonable doubt. Instead, the court chose only to instruct the jury that "half a dozen copies" of instructions, which included the presumption of innocence and reasonable doubt, would be available for "review" during deliberations if the jurors "deem[ed] it necessary." In going over the elements of the charged offenses, which the court referred to as the "crux of the issues here," the court summarized the written instructions, thereby impermissibly elevating some of the instructions over others. The court also did not tell the jury that the reasonable doubt standard applied to each element of four of the six defined offenses. We hold that the final charge delivered orally to the jury obscured and diluted the state's burden of proving all elements of each charge beyond a reasonable doubt and accordingly,

Peterson was denied due process of law and is entitled to a new trial.

In light of our disposition, we need not address Peterson's argument that he relied to his prejudice on the court's instruction before opening statement defining "dangerous weapon," although we note that generally, the use of preliminary instructions would not obviate the possibility or necessity of amending the instructions after the evidence is in. *State v. Kirch*, 322 N.W.2d 770, 774 (Minn.1982).[5]

Reversed and remanded.

---

**5.** This case also demonstrates the pitfalls in the early distribution of individual copies of written instructions that are not a complete copy of the substantive preliminary instructions the court has verbally given, and also the pitfalls of distributing written instructions that turn out to be erroneous by the close of the evidence. As a general rule, prior to the close of evidence, the trial court is not in a position to comprehensively instruct the jurors as to the applicable law.