STATE of Minnesota, Respondent,

v.

Jason Michael IVES, Appellant,

No. C0–96–1728.

Supreme Court of Minnesota.

Sept. 11, 1997.

---

Lawrence W. Pry, Assistant State Public Defender, St. Paul, for Appellant.

Hubert H. Humphrey, III, Minnesota Attorney General, St. Paul, Michael O. Freeman, Hennepin County Attorney by Linda M. Freyer, Assistant County Attorney, Minneapolis, for Respondent.

## OPINION

TOMLJANOVICH, Justice.

Appellant Jason Michael Ives challenges his conviction of two counts of murder in the first degree on the grounds of prosecutorial misconduct and ineffective assistance of counsel. Although we conclude that the prosecutor's reference to Ives' character during closing arguments amounted to prosecutorial misconduct, we hold that such misconduct was not so prejudicial that it denied Ives a fair trial. As to Ives' other claims of prosecutorial misconduct and his claim for ineffective assistance of counsel, we conclude that reversal of his conviction is not warranted on those grounds.

Ives' conviction arose from the November 1995 shooting death of James Magnus, Jr., who was a night clerk at an Amoco station. Magnus died from a single gunshot wound to his head. An envelope containing $200 was the only item that was taken from the station. The only evidence found at the scene of the crime were several latent fingerprints on the entrance and exit doors.

Less than 24 hours after the murder, an employee of a local television station reported that she received an anonymous call from a man who identified the shooter as "Jason Eyes." The caller eventually led investigators to several witnesses who said that Ives admitted to his involvement in the shooting. According to a friend of Ives, Aaron Hanson, Ives told him that he and Brian Crooks went to the Amoco station that night and Crooks pulled his gun on Magnus. When Crooks demanded the code to open the cash register, Crooks became afraid that Magnus had given him a code that alerted the police instead. Ives allegedly then cocked his gun again and released the hammer, forgetting that there was a bullet in the next chamber.

At trial, the state argued that Ives and Crooks robbed the store together and that Ives shot Magnus after Crooks fled the store. The state presented several witnesses who testified that Ives had admitted his involvement in the Amoco incident. Warren Kunnus testified that he found Ives sleeping on his floor about 6 or 7 a.m. on the morning of November 30, 1995. Kunnus said that Ives mumbled to him that he had gone to the Amoco station earlier that morning for cigarettes and that "someone was dead." Kunnus also testified that Ives had a gun with him that morning and that he asked to leave it at Kunnus' home. Kunnus said he agreed to let Ives leave the gun because he was afraid of Ives. Kunnus said he did not know what Ives eventually did with the gun.

The police subsequently executed a search warrant at Kunnus' home and found a revolver hidden in the ceiling tiles, along with a bag containing three bullets and one expended cartridge. A police firearms expert determined that the bullet fragments recovered from Magnus' body had been fired from this handgun. The police also determined that one of the fingerprints lifted from the doors at the Amoco station matched a finger on Ives' hand.

At trial, the state presented at least six other witnesses who testified that soon after the incident, they heard Ives speak about his involvement in the Amoco shooting. Ives' attorney argued that it was Aaron Hanson, not Ives, who committed the robbery and shot Magnus. Ives' attorney attempted to show that Hanson set Ives up for arrest, and then Hanson lied at trial to conceal his own involvement in the crime. As an alternative theory, Ives' attorney argued that regardless of who committed the murder, the evidence showed that the shooting was accidental.

A jury convicted Ives of two counts of murder in the first degree in violation of Minn.Stat. §§ 609.185(1) and 609.185(3) (1994)(premeditated murder, intentional murder in the commission of a felony) and two counts of murder in the second degree in violation of Minn.Stat. §§ 609.19(1) and

609.19(3) (1994) (intentional murder, felony murder in the commission of an aggravated robbery). Ives was subsequently sentenced to life imprisonment.

Ives argues that the prosecutor during final argument improperly interjected her opinion on the credibility of evidence. When discussing the testimony of Aaron Hanson and characterizing the dilemma that Hanson was confronted with in his decision to testify, the prosecutor commented as follows: "And so there is his dilemma, do I tell the police what I know because it's the right thing to do, or do I protect my friend and remain loyal to him despite what he did." The prosecutor also commented that Hanson was a person of "consci[ence]." Furthermore, when discussing the testimony of another witness, the prosecutor commented that "she was telling you to the best of her recollection what she had been told."

Ives also argues that the prosecutor improperly appealed to the passions of the jury during the final argument by emphasizing the tragic nature of Magnus' death. Specifically, Ives challenges comments made by the prosecutor regarding Magnus' personal background and the impact Magnus' death had on his family and people in his community. Ives argues that such comments were intended to arouse sympathy for Magnus.

Ives also challenges his conviction on the basis that the prosecutor improperly disparaged Ives' defense by allegedly leading the jury to believe that a defendant cannot have alternative theories or that it was improper for the defense to have inconsistent theories. During final argument, the prosecutor framed the defense theories as multiple choice "theories and excuses." Furthermore, the prosecutor labeled one particular defense theory as "the 'Aaron Hanson did it' theory" or "defense theory or excuse Number 1." When referring to references that Ives blacked out during the shooting, the prosecutor further stated that "if you are in a blackout you don't remember. But if it's an accident, you do remember. So which is it? Do you remember the details, or don't you remember the details?"

Ives also argues that the prosecutor improperly attacked Ives' character when she made the following remarks during final argument: "He [Magnus] was gunned down by a couple of would-be punks who apparently thought carrying a .357 revolver made them invisible. What they thought was giving them the power in their own pathetic little lives."

Finally, Ives alleges that the prosecutor made an indirect reference to Ives' pre-arrest silence in violation of his Fifth Amendment right against self-incrimination. Specifically, when discussing Ives' defense of accident, the prosecutor stated "[i]f this was an accident, why didn't [Ives] stay and tell the police: 'The gun just went off. It was an accident.' "

 We conclude that none of the claims for prosecutorial misconduct brought by Ives warrant a reversal of his conviction. The failure of Ives' attorney to object or seek cautionary instructions in response to any of the statements at issue in this appeal weighs heavily against granting any remedy. Typically, a defendant is deemed to have waived the right to raise an issue concerning the prosecutor's final argument if the defendant fails to object or seek cautionary instructions. *State v. Atkins,* 543 N.W.2d 642, 647 (Minn. 1996); *State v. Gunn,* 299 N.W.2d 137, 138 (Minn.1980); *State v. Flom,* 285 N.W.2d 476, 477–78 (Minn.1979). A defendant's failure to object to the prosecutor's statements implies that the comments were not prejudicial. *State v. Parker,* 353 N.W.2d 122, 128 (Minn. 1984); *State v. Ture,* 353 N.W.2d 502, 516–17 (Minn.1984). Because Ives' attorney failed to object to any of the prosecutor's remarks during final argument, we conclude that most of those remarks were not prejudicial.

 We can reverse a conviction even when the defendant failed to preserve the issue on appeal if we deem the error sufficient to do so. *Gunn,* 299 N.W.2d at 138; *Atkins,* 543 N.W.2d at 647–48; *State v. Post,* 512 N.W.2d 99, 103 (Minn.1994). In this case, we are particularly concerned that the prosecutor's references to Ives as a "would-be punk[ ]" with a "pathetic little li[fe]" was an improper attack against Ives' character. This court previously has held that improper character attacks against the defendant may

constitute prosecutorial misconduct. *State v. DeWald,* 463 N.W.2d 741, 744–45 (Minn. 1990); *State v. Washington,* 521 N.W.2d 35, 39–41 (Minn.1994). We conclude in this case that the prosecutor's references to Ives' character had the potential for planting in the jurors' minds a prejudicial belief in otherwise inadmissible evidence. *See State v. Tahash,* 280 Minn. 155, 157, 158 N.W.2d 504, 506 (1968).

However, we have traditionally granted relief for plain errors affecting substantial rights only if those errors had the effect of depriving the defendant of a fair trial. *See Rairdon v. State,* 557 N.W.2d 318, 323 (Minn. 1996); *State v. Shannon,* 514 N.W.2d 790, 793 (Minn.1994); *State v. Lewis,* 547 N.W.2d 360, 364–65 (Minn.1996); *State v. Post,* 512 N.W.2d 99, 104 (Minn.1994). Any misconduct committed by the prosecutor's comments must be viewed against the overwhelming evidence of Ives' guilt. *Rairdon,* 557 N.W.2d at 324 (citing *State v. Langley,* 354 N.W.2d 389, 401–02 (Minn.1984)).

■ In this case, the state presented at least seven witnesses who testified that soon after the incident, they heard Ives tell them about his involvement in the Amoco shooting. Given the overwhelming evidence of Ives' guilt, we conclude that the prosecutor's improper comments regarding Ives' character beyond a reasonable doubt did not influence the jury in its determination of guilt.[1]

Ives further challenges his conviction on the grounds that he was denied effective assistance of counsel. Specifically, Ives claims that his attorney did not adequately prepare for trial, that his attorney failed to call witnesses who would have raised questions regarding the credibility of the state's witnesses, and that his attorney failed to object to the prosecutor's comments regarding Ives' character.[2] Ives also claims that the investigator on his case failed to cooperate with Ives' requests to interview certain potential witnesses.

■ When analyzing a claim for ineffective assistance of counsel, this court applies the two-part test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must prove that counsel's representation fell below an objective standard of reasonableness. Second, the defendant must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Scruggs v. State,* 484 N.W.2d 21, 25 (Minn.1992) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068); *Fox v. State,* 474 N.W.2d 821, 826 (Minn.1991); *Hodgson v. State,* 540 N.W.2d 515, 518 (Minn.1995).

■ In regard to Ives' claim that his attorney failed to adequately prepare for his trial, there is a strong presumption that an attorney's representation falls within the wide range of "reasonable professional assistance." *State v. Jones,* 392 N.W.2d 224, 236 (Minn. 1986); *Scruggs,* 484 N.W.2d at 27. For representation to be regarded as constitutionally defective, this court has stated that "it must be so inadequate as to amount to a sham." *State v. Fields,* 279 Minn. 374, 377, 157 N.W.2d 61, 63 (1968) (citations omitted).

■ To support his claim that his attorney was inadequately prepared for his trial, Ives asserts only that his attorney did not begin working on his case until one month before trial and only met with him in jail a total of seven times in preparation for his case. However, this court has previously stated that the amount of time an attorney spends on a case is not the determinative issue of whether a defendant was denied effective assistance of counsel. Rather, this court has held that the determinative issue is whether the defendant was adequately represented by counsel. *Adler v. State,* 284 Minn. 31, 37, 169

---

1. In regard to Ives' remaining claims of prosecutorial misconduct, we reiterate our previous holdings that prosecutors are given considerable latitude during final argument and that they are not required to make a colorless argument. *See State v. Smith,* 541 N.W.2d 584, 589 (Minn. 1996); *State v. Atkins,* 543 N.W.2d 642, 648 (Minn.1996).

2. Ives also claims that his attorney failed to strategize a defense for his case at trial. However, defense counsel argued at trial that it was Hanson, not Ives, who committed the murder.

N.W.2d 233, 237 (1969). A review of the record indicates that Ives' representation at trial was not so inadequate as to amount to a sham. On the contrary, his attorney was aggressive in his cross-examination of the state's witnesses. He presented three witnesses in Ives' defense, and he attempted to show that it was Aaron Hanson and not Ives who committed the murder. Furthermore, as Ives himself concedes, he was fully advised by his attorney of the prosecution's evidence against Ives.

The remainder of Ives' ineffective assistance of counsel claim is based on his criticism of his attorney's trial tactics. Specifically, Ives argues that his attorney failed to present witnesses who would have raised questions about the credibility of the state's witnesses and that he failed to object to the prosecutor's comments on Ives' character. As we have previously held, which witnesses to call at trial is a question that properly lies within the discretion of trial counsel. *Scruggs*, 484 N.W.2d at 26 (citing *Jones*, 392 N.W.2d at 236). To allow attorneys the flexibility to represent their clients to the fullest extent possible, such trial tactics should not be reviewed by an appellate court. *Id.*

Ives' claim for ineffective assistance of counsel fails because Ives has not shown that he was prejudiced by this alleged error. Given the weight of the evidence against Ives, it is doubtful that an objection by his attorney would have changed the outcome of the trial. *See Scruggs*, 484 N.W.2d at 25.

In summary, we reject most of Ives' claims for prosecutorial misconduct because his attorney's failure to object or seek cautionary instructions in response to the prosecutor's allegedly improper remarks during closing argument implies that such remarks were not prejudicial. Although we conclude that the prosecutor's reference to Ives as a "would-be punk[ ]" with a "pathetic little li[fe]" amounted to prosecutorial misconduct, we conclude that this misconduct was not so prejudicial to Ives that it had the effect of denying him a fair trial. We further con-

clude that Ives was not denied effective assistance of counsel.

Affirmed.