STATE OF MINNESOTA

IN SUPREME COURT

A21-1621

Court of Appeals                                                    Anderson, J.
                                      Dissenting, Chutich, Moore, III, JJ.
                                      Took no part, McKeig, Procaccini, JJ.

State of Minnesota,

                    Respondent,

vs.                                                    Filed:  December 13, 2023
                                      Office of Appellate Courts

Christian Portillo,

                    Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

John Choi, Ramsey County Attorney, Jeffrey A. Wald, Assistant Ramsey County Attorney, Saint Paul, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

The State committed a plain error that affected the appellant's substantial rights when the prosecutor misstated the law during the closing-argument rebuttal, and to ensure the fairness and integrity of judicial proceedings the plain error must be addressed.

Reversed and remanded.

1

O P I N I O N

ANDERSON, Justice.

The issue presented here is whether appellant Christian Portillo was denied a fair trial based on prosecutorial errors committed by the State. In 2019, the State charged Portillo with two counts of second-degree criminal sexual conduct in violation of Minnesota Statutes section 609.343, subdivision 1(g), (h)(iii) (2018).[1] During Portillo's jury trial, the prosecutor elicited testimony from the State's witnesses regarding evidence that the district court previously had ruled was inadmissible, but the district court denied Portillo's motion for a mistrial. During the closing-argument rebuttal, the prosecutor told the jury that Portillo no longer held the presumption of innocence based on the evidence presented during the trial. Portillo did not object.

The jury found Portillo guilty of one count of second-degree criminal sexual conduct, and Portillo appealed. In a nonprecedential opinion, the court of appeals affirmed, concluding that the district court did not abuse its discretion by denying Portillo's motion for a mistrial, the misstatement of the law by the prosecutor during the State's closing-argument rebuttal did not affect Portillo's substantial rights, and the cumulative impact of the alleged errors did not deny him a fair trial. *State v. Portillo*, No. A21-1621, 2022 WL 4682822 (Minn. App. Oct. 3, 2022). Because we conclude that the prosecutor's misstatement of the law during the State's closing-argument rebuttal was a plain error that

---

[1]    This statute and the relevant subdivisions were amended in 2019 and 2021, resulting in moving the relevant subdivisions to new positions within the statute. These amendments, primarily a reorganization of statutory text, have no bearing on our analysis.

2

affected Portillo's substantial rights and must be addressed to ensure the fairness and integrity of the judicial proceedings, Portillo is entitled to a new trial. We therefore reverse the conviction and remand for further proceedings consistent with this opinion.

**FACTS**

J.G. was born in March 1997. When J.G. was 11 years old, her mother began a relationship with Christian Portillo, who then moved into their home. J.G.'s mother owned a cleaning company, and Portillo and J.G. both worked for the company. J.G. and Portillo were often alone together while working. Shortly after Portillo moved into J.G.'s home, he allegedly began acting inappropriately toward her. According to J.G., Portillo touched her buttocks and vagina over her clothing and touched her breasts both over and under her clothing. Portillo's brothers moved into the home when J.G. was 16 or 17 years old, at which point the alleged sexual abuse stopped. According to J.G., the abuse had occurred "every day" from when she was 11 years old until Portillo's brothers moved into her home.

Portillo moved out of the home in late 2013 or early 2014, at which point J.G., then 17 years old, first reported the alleged sexual abuse to law enforcement. In her initial March 2014 report to law enforcement, J.G. told investigators that Portillo had touched her buttocks and vagina over her clothing and had touched her breasts both over and under her clothing. J.G. met with law-enforcement investigators several other times, during which she reported previous abuse she suffered at the hands of an uncle (not Portillo), as well as an incident in which she alleged that Portillo had attempted to get her to manually stimulate his genitals. When Portillo was interviewed by law-enforcement investigators, he admitted to "[t]ouching [J.G.'s] breasts over the clothing at a party."

3

In January 2019, the State charged Portillo with criminal sexual conduct in the second degree in violation of section 609.343, subdivision 1(g), alleging one incident of sexual contact between 2010 and 2014 when Portillo allegedly confessed that he touched J.G. when she was wearing "very tight clothes at a party one time." The State amended the complaint to add another charge of criminal sexual conduct in the second degree in violation of section 609.343, subdivision h(iii), alleging "multiple acts committed over an extended period of time" by Portillo against J.G. from 2010 to 2014.

At the outset of the jury trial, the district court ruled that the State could not elicit certain kinds of testimony from witnesses during the trial, including referring to J.G. as a "victim," eliciting testimony from J.G.'s mother regarding any changes in J.G.'s behavior that would be consistent with signs of trauma, calling attention to the military service of a witness, and eliciting testimony from witnesses about any other alleged bad acts by Portillo. During the State's direct examination of its first three witnesses, the prosecutor allegedly elicited testimony that violated the district court's evidentiary rulings. Specifically, the prosecutor asked a question referring to J.G. as a "victim" and elicited responses from witnesses suggesting that Portillo had forced J.G. to snort drugs, that J.G.'s behavior had been "more on edge," and that J.G.'s mother had captured Portillo's conduct on a surveillance camera. The defense moved for a mistrial, arguing that "[s]o far every witness that's testified has gotten into either things that Your Honor has ruled are not permissible or they have tried to." The district court, although "disturbed by the number of times during the trial that witnesses have gone into territories that they were not allowed to go into,"

concluded that the prosecutor did not intentionally elicit any inadmissible testimony and that it did not "rise[] to the level of a mistrial."

During closing argument, the State emphasized the testimony the witnesses had given and argued that the elements of the charges against Portillo were proven. The State emphasized the jury's role in assessing the credibility of the witnesses and argued that J.G. had given credible testimony. In response, Portillo's defense counsel argued that J.G. had misremembered the alleged sexual abuse and noted that Portillo was entitled to the presumption of innocence. Additionally, defense counsel argued that the State had not proven Portillo's guilt beyond a reasonable doubt because the testimony of the witnesses was inconsistent and imprecise. During the State's closing-argument rebuttal, the prosecutor made the following statement:

> The presumption of innocence comes with an individual accused, unless and until the state proves its case beyond a reasonable doubt. [Defense counsel] correctly told you that. But it leaves him when the state has proven its case beyond a reasonable doubt. He no longer has that presumption. You've heard all the evidence. You've heard all of the state's case against Mr. Portillo. He no longer has that presumption of innocence. He has been proven guilty beyond a reasonable doubt. We've gone through those elements. You'll be able to talk and consider each other's thoughts and the information you heard throughout the course of the case, but he no longer has that presumption of innocence.

Portillo did not object during the rebuttal.

In the district court's jury instructions directly following the parties' closing arguments, the district court stated:

> Presumption of innocence. The defendant is presumed innocent of the charges made. This presumption remains with the defendant unless and until the defendant has been—let me start over. The presumption remains with the defendant unless and until the defendant has been proven guilty beyond

5

a reasonable doubt. That the defendant has been brought before the court by the ordinary process of law and is on trial should not be considered by you as in any way suggesting guilt. The burden of proving guilt is on the state. The defendant does not have to prove innocence.

The jury found Portillo guilty of the count of second-degree criminal sexual conduct alleging multiple acts of contact with sexual or aggressive intent between 2010 and 2014, but acquitted Portillo of the other count of second-degree criminal sexual conduct alleging the single act of touching J.G. during a party with sexual or aggressive intent between 2010 and 2014.

Portillo appealed, arguing that prosecutorial errors violated his right to a fair trial. *Portillo*, 2022 WL 4682822, at *5. Specifically, Portillo challenged the prosecutor's multiple violations of the district court's evidentiary rulings when eliciting testimony from witnesses, including by calling J.G. a "victim" and eliciting testimony that Portillo forced J.G. to snort drugs, testimony about a witness's military service, and testimony suggesting that J.G.'s mother learned of Portillo's alleged abuse from video surveillance. *Id.* at *2. Portillo also argued that the prosecutor misstated the law during rebuttal by telling the jury that he was not entitled to the presumption of innocence. *Id.* at *4. Portillo acknowledged that he did not object to every instance of improper testimony or the statement made by the prosecutor during rebuttal, but he insisted that the cumulative impact of the prosecutorial errors deprived him of a fair trial. *Id.* at *4–5.

The court of appeals affirmed in a nonprecedential opinion. *Id.* at *6. Regarding the violations of the district court's ruling when eliciting testimony, the court of appeals determined that "the challenged testimony was either limited in scope, withdrawn, or

6

corrected by the district court" and therefore found no prosecutorial error. *Id.* at \*3. Regarding the prosecutor's statement about the presumption of innocence during the closing-argument rebuttal, the court of appeals concluded that any alleged error did not affect Portillo's substantial rights. *Id.* at \*5. The court of appeals reasoned that "the alleged misstatement occurred once in a closing argument that spanned 18 pages of transcript" after defense counsel had already explained in its own closing argument the State's high burden of proof, and "the district court correctly described the presumption of innocence in its final jury instructions and instructed the jury to disregard any statements given by an attorney that differ from the law given by the court." *Id.*[2] Accordingly, the court of appeals concluded that a new trial based on prosecutorial error was not warranted. *Id.* at \*6.

Portillo filed a petition for discretionary review, which we granted. Because we conclude that the prosecutor's misstatement of the law during the closing-argument rebuttal was plain error that affected Portillo's substantial rights and should be addressed to ensure the fairness and integrity of judicial proceedings, Portillo is entitled to a new trial. We therefore reverse the court of appeals and remand for further proceedings consistent with this opinion.

## ANALYSIS

We focus on the question of whether a prosecutorial error during the closing-argument rebuttal deprived Portillo of his right under the Sixth Amendment to the

---

[2] Although the court of appeals cites the closing argument as 18 pages in length, the transcript available to us appears to span 20 pages total (six for the rebuttal and 14 for the initial closing argument) and we note it as such in this opinion.

United States Constitution to a fair trial.[3]  Specifically, Portillo argues that the prosecutor misstated the law by telling the jury during rebuttal that he was no longer entitled to the presumption of innocence before the jury returned its verdict.  Portillo's counsel did not object to the prosecutor's statement during the State's closing-argument rebuttal.  "Because no objection was made, we apply the modified plain-error test outlined in *Ramey*," under which "the defendant has the burden to demonstrate that the misconduct constitutes (1) error, (2) that was plain." *State v. Matthews*, 779 N.W.2d 543, 551 (Minn. 2010) (citing *State v. Ramey*, 721 N.W.2d 294, 300 (Minn. 2006)).  "If the defendant is successful, the burden then shifts to the State to demonstrate that the error did not affect the defendant's substantial rights." *Id.*  "If these three prongs are satisfied, the court then assesses whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Id.*  In addition, "our analysis of the fairness, integrity, or public reputation of judicial proceedings does not focus on whether the alleged error affected the outcome resulting in harm to the defendant in the particular case," and instead concerns whether it would have wider ramifications affecting the public's trust in the fairness and integrity of

---

[3]     On appeal to our court, Portillo makes two primary claims.  First, he contends that the prosecutor's misstatement regarding the presumption of innocence during the State's closing-argument rebuttal, to which he did not object, was a plain error that impacted his substantial rights and warrants a new trial to ensure the fairness and integrity of the proceedings.  Second, Portillo argues that the cumulative impact of all the prosecutorial errors at trial, both the elicitation of improper testimony and the misstatement of the presumption of innocence, warrants a new trial.  Because we conclude that the prosecutor's misstatement of the presumption of innocence alone was reversible error, we do not reach Portillo's claim that the cumulative impact of the prosecutorial errors deprived him of a fair trial.

8

our judicial system. *Pulczinski v. State*, 972 N.W.2d 347, 356 (Minn. 2022). We address each prong in turn.

A.

We begin with the first prong of the modified plain-error test that applies to unobjected-to allegations of prosecutorial error, under which Portillo must show that the prosecutor's statement was, in fact, erroneous. Criminal defendants are afforded certain protections under the U.S. and Minnesota Constitutions. It is axiomatic that criminal defendants are presumed innocent until proven guilty beyond a reasonable doubt.[4] *See State v. Peterson*, 673 N.W.2d 482, 486 (Minn. 2004); *In re Winship*, 397 U.S. 358, 363 (1970). Moreover, it has long been held that "[o]ne accused of crime has the right to have the jury take [the presumption of innocence] to the jury room with them as the voice of the law." *Peterson*, 673 N.W.2d at 486 (quoting *Merrill v. United States*, 338 F.2d 763, 768 (5th Cir. 1964), quoting, in turn, *Dodson v. United States*, 23 F.2d 401, 403 (4th Cir. 1928)); *see also Dodson*, 23 F.2d at 403 ("Important as it is that violators of the law be punished, it is of infinitely greater importance that this safeguard of the innocent be preserved inviolate.").

Portillo argues that the prosecutor's statement during the State's closing-argument rebuttal amounted to a misstatement of the law that he "had lost his presumption of innocence" before the jury had returned its verdict—indeed, before the jury even began its

---

[4] The foundational nature of the presumption of innocence is not disputed and is long-standing. The earliest apparent reference in Minnesota to the presumption of innocence was in 1865, 7 years after statehood. *State v. Dineen*, 10 Minn. 407, 416 (1865) ("[T]he defendant was presumed innocent until he was proved guilty . . . .").

9

deliberations. The State, in contrast, contends that the prosecutor did not misstate the law; rather, the State argues that the prosecutor's statement during rebuttal was consistent with the pattern jury instructions on the presumption of innocence and equivalent to prior closing-argument statements regarding the presumption of innocence that our court has approved in the past, including in *State v. Young*, 710 N.W.2d 272, 280 (Minn. 2006).

> In *Young*, the prosecutor gave the following statement during closing argument:

> When the trial began, the Court told you that that young man right there is an innocent man. He was. Until the defense stood up and rested. Because at that time the state had presented to you sufficient evidence to find the defendant guilty of all the crimes that the Court just gave you the—instructions on. He's no long [sic] an innocent man. The evidence that's been presented to you by the state has shown you that he's guilty beyond a reasonable doubt. Let me tell you why[.]

*Id.* (alteration in original). The defense in *Young* argued "that this statement amounted to a claim that Young was not entitled to the presumption of innocence when the jurors began their deliberation," and we concluded that "the prosecutor's argument appears to be that the state had produced sufficient evidence of Young's guilt to overcome the presumption of innocence, not that he was not entitled to the presumption in the absence of proof beyond a reasonable doubt." *Id.* at 280–81. In contrast, the prosecutor here said on three separate occasions during the closing-argument rebuttal that Portillo had *already* lost the presumption of innocence:

> *He no longer has that presumption.* You've heard all of the evidence. You've heard all of the state's case against Mr. Portillo. *He no longer has that presumption of innocence.* He has been proven guilty beyond a reasonable doubt. We've gone through those elements. You'll be able to talk and consider each other's thoughts and the information you heard throughout the course of the case, but *he no longer has that presumption of innocence.*

10

(Emphasis added.) In *Young*, the prosecutor never explicitly mentioned the presumption of innocence in the portion of the State's closing argument at issue; even in the context of the argument as a whole, the prosecutor only stated that the evidence was sufficient to find the defendant guilty, so "[h]e's no long[er] an innocent man." 710 N.W.2d at 280.[5] Here, the prosecutor specifically named the presumption of innocence and explicitly stated that it no longer applied to Portillo even before the jurors began their deliberations.

The prosecutor's statement during rebuttal is not consistent with Minnesota law because the prosecutor's statement erroneously suggested that Portillo, *at the time the prosecutor made this statement*, had been proven guilty beyond a reasonable doubt and was therefore no longer entitled to the presumption of innocence. A defendant is only proven guilty beyond a reasonable doubt, however, when the jury has deliberated and reached that conclusion, not before. *See Peterson*, 673 N.W.2d at 486 (" 'One accused of crime has the right to have the jury take it to the jury room with them as the voice of the law.' " (quoting *Merrill*, 338 F.2d at 768, quoting, in turn, *Dodson*, 23 F.2d at 403)); *State v. Larson*, 281 N.W.2d 481, 485 n.2 (Minn. 1979) (holding that jury instructions should contain "an instruction similar to" the statement that "[t]he defendant is presumed to be innocent of the charge made against him, and that presumption abides with him unless and until he has been proved guilty of the charge beyond a reasonable doubt" (citation omitted)

---

[5]     We nonetheless cautioned in *Young* that "when explaining the presumption of innocence, counsel would be wise to ' adopt some definition which has already received the general approval of the authorities, especially those in our own state.' " 710 N.W.2d at 281 (quoting *State v. Bohlsen*, 526 N.W.2d 49, 50 (Minn. 1994), quoting, in turn, *State v. Sauer*, 38 Minn. 438 (1888)).

(internal quotation marks omitted)); *Moore v. State*, 945 N.W.2d 421, 434 (Minn. App. 2020) ("[O]nly once the jury reaches the conclusion that a defendant is guilty beyond a reasonable doubt has the presumption [of innocence] been lost.").

The prosecutor told the jury, during the State's closing-argument rebuttal, that Portillo no longer had the presumption of innocence before the jury began deliberating. Because this assertion is not correct and is contrary to the constitutional protections afforded criminal defendants under the U.S. and Minnesota Constitutions, we conclude that the prosecutor's statement was an error.

B.

Having concluded that the prosecutor's statement was an error, we must now determine whether the error was "plain." *Matthews*, 779 N.W.2d at 551. For an error to be plain, the issue must have been " 'clear' or 'obvious.' " *Ramey*, 721 N.W.2d at 302 (citation omitted). "Usually this is shown if the error contravenes case law, a rule, or a standard of conduct." *Id.* An error is plain if it contravenes a principle that is "conclusively resolved" at the time of appeal. *State v. Jones*, 753 N.W.2d 677, 689 (Minn. 2008) ("Because neither this court nor the federal courts have conclusively resolved this issue, we cannot say that the prosecutor 'contravene[d] case law, a rule, or a standard of conduct.' " (quoting *Ramey*, 721 N.W.2d at 302)); *State v. Jackson*, 714 N.W.2d 681, 690 (Minn. 2006) (explaining that to satisfy the second prong of the plain-error test, "the error must be plain at the time of the appeal"); *see also United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) ("Certainly, an error cannot be deemed 'plain,' in the absence of binding precedent, where there is a genuine dispute among the [courts].").

12

Portillo insists that the statements made by the prosecutor here were condemned by our court's long-standing precedent. The State, on the other hand, points to several other decisions in which similar statements to the jury did not constitute plain errors. The State argues that these cases, "[a]t the very least," show that the prosecutor's "statement about the presumption of innocence did not violate clearly established and conclusively resolved case law." We disagree.

Our court has made clear that "[t]he presumption of innocence is a fundamental component of a fair trial under our criminal justice system," a "bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' " *Peterson*, 673 N.W.2d at 486 (quoting *Winship*, 397 U.S. at 363). Only "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged" does the presumption disappear. *Herrera v. Collins*, 506 U.S. 390, 399 (1993). None of the decisions that the State cites to support its position—namely, that the law is unsettled with regard to how far a prosecutor can go in saying that a defendant has lost the presumption of innocence prior to a jury's deliberations—approved of language that corresponds with the language that the prosecutor used here.

For example, in *Young*, as noted earlier, the prosecutor's statement that the defendant was "no long[er] an innocent man" did not make explicit reference to the presumption of innocence or suggest that the defendant no longer was entitled to the presumption before the jury's deliberations. 710 N.W.2d at 280. And in *State v. Vue*, where the prosecutor said in closing argument that the defendant "has now lost that presumption of innocence as a result of the evidence that you have heard," we concluded

13

that in context, quoting *Young*, the argument "appear[ed] to be that the state had produced sufficient evidence" to overcome the presumption rather than a contention that the defendant was not entitled to the presumption. 797 N.W.2d 5, 13–14 (Minn. 2011) (emphasis omitted). In contrast, in neither *Young* nor *Vue* were we presented with the circumstances here—a clear assertion by the prosecutor to the jury that the jury was "to talk and consider each other's thoughts and the information you heard throughout the course of the case" without affording Portillo the presumption of innocence because "he no longer has that presumption."

Ultimately, we conclude that the prosecutor's statement during the State's closing-argument rebuttal asserting that Portillo had already lost the presumption of innocence was a plain error.

C.

We next turn to the third prong of the modified plain-error test, where the burden shifts to the State to "show that there is 'no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury.' " *Matthews*, 779 N.W.2d at 551 (quoting *Ramey*, 721 N.W.2d at 302); *see also Ramey*, 721 N.W.2d at 299–300 ("[W]hen prosecutorial misconduct reaches the level of plain or obvious error—conduct the prosecutor should know is improper—the prosecution should bear the burden of demonstrating that its misconduct did not prejudice the defendant's substantial rights."). To determine whether there is a reasonable likelihood that the prosecutor's error had a significant effect on the verdict, "we consider the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether

14

the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007).

Portillo argues that the guilty verdict depended primarily on whether the jury found the testimony of J.G. to be credible, so "[t]he prosecutor's statements in closing argument . . . impacted jury deliberations" and "the [district] court's instructions did not undo that damage either." According to Portillo, the evidence of his guilt in this case was relatively weak because of inconsistencies in J.G.'s reports, the fact that the events underlying the charges took place years prior to trial, and there was no corroborating or other evidence to bolster J.G.'s testimony. The State concedes that the evidence against Portillo was not overwhelming but nonetheless argues that "it was strong." The State highlights that based on the guilty verdicts, the jury clearly found J.G. to be credible, a determination the State says is entitled to deference, and notes that Portillo admitted to touching J.G.'s breasts one time.[6]

We agree with Portillo that the evidence of guilt here was not strong.[7] Portillo is correct that the allegations are based solely on the testimony of J.G. without any

---

[6]     As noted previously, Portillo faced two charges, one which alleged multiple instances of sexual misconduct against J.G. over a period of time, and one which alleged a single incident of sexual misconduct. The evidence the State cites here relates to that latter charge, for which the jury actually *acquitted* Portillo, undermining the State's argument that the evidence in this case was strong.

[7]     When analyzing error under the plain-error doctrine in the context of erroneous jury instructions, we have indicated that the correct threshold of evidence required when considering the weight of the evidence under the third prong of the test is greater than merely strong or sufficient to convict. *See State v. Huber*, 877 N.W.2d 519, 527 (Minn. 2016) ("It is true that we have, at different times, used the words 'overwhelming,' 'considerable,' and 'ample,' to describe the quantum of evidence required in determining

15

corroborating testimony, physical evidence, or other witnesses to the abuse. Moreover, the testimony at trial was given more than 10 years after the alleged conduct occurred. Portillo also correctly notes that J.G.'s statements regarding the abuse have been inconsistent on several occasions.[8]

Cases in which our court has concluded that the evidence against a defendant was strong enough to counteract any alleged prosecutorial errors have tended to show more than the evidence here. *See, e.g.*, *State v. Haglund*, 267 N.W.2d 503, 506 (Minn. 1978) (declining to reverse an aggravated-robbery conviction in part because the State's evidence was overwhelming based on "positive testimony" and "strong corroborating evidence," including testimony about physical evidence); *State v. Huber*, 877 N.W.2d 519, 526 (Minn. 2016) (concluding that the State's evidence was not overwhelming when it was

---

whether a plain error in the jury instructions affected a defendant's substantial rights. . . . [T]he words describe a large quantum of evidence presented by the State on the contested element, and the quantum of evidence necessary may depend on our analysis of any other relevant factors in a substantial-rights analysis. Here, the evidence presented by the State cannot be characterized as 'overwhelming,' 'considerable,' or 'ample.' ").

[8]    Recent scholarship has pointed out that "[p]sychological trauma can operate . . . in undermining the internal consistency of a survivor's story," and it is indeed a "predictable result" that a survivor will "skip, or forget, certain parts of her story." Deborah Epstein & Lisa A. Goodman, *Discounting Women: Doubting Domestic Violence Survivors' Credibility and Dismissing Their Experiences*, 167 U. Penn. L. Rev. 399, 410–411 (2019). Our inquiry, however, focuses on whether there is a "reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Matthews*, 779 N.W.2d at 551 (citation omitted) (internal quotation marks omitted). Therefore, in a trial that largely hinges on the credibility of a single witness, inconsistencies in a witness's statements may undermine the witness's credibility before the jury, increasing the likelihood that prosecutorial error would affect the verdict, notwithstanding any problems with interpreting inconsistencies in testimony offered by trauma survivors as untruthfulness.

16

"entirely circumstantial" without any direct evidence, there was no admission from the defendant, and there was evidence to the contrary). Moreover, strength of the case is not determinative, and prosecutorial error may deprive a defendant of a fair trial even in a case in which the evidence of guilt is strong. *See, e.g.*, *State v. Mayhorn*, 720 N.W.2d 776, 791 (Minn. 2006) (concluding that, although "[t]he state had a strong case against Mayhorn," nonetheless "even the strongest evidence of guilt does not eliminate a defendant's right to a fair trial"); *State v. Harris*, 521 N.W.2d 348, 354–55 (Minn. 1994) (noting that "[t]he prosecutor had a strong case," but "it [was] not clear to us whether the jury found Harris guilty because of the relevant evidence and reasonable inferences therefrom, or because of inadmissible evidence and innuendo"); *State v. Williams*, 525 N.W.2d 538, 549 (Minn. 1994) (reversing the defendant's conviction although "there undoubtedly was sufficient admissible evidence on which to base the verdict of guilty" because prosecutorial misconduct deprived the defendant of a fair trial); *State v. Williams*, 210 N.W.2d 21, 25–27 (Minn. 1973) (holding that, although "the evidence [was] clearly sufficient to support defendant's conviction," the prosecutor's misconduct was prejudicial and warranted a new trial).

Regarding the pervasiveness of the error and the remediation of any prejudice, Portillo disputes the holding of the court of appeals that the prosecutor's " 'single misstatement' was cured by the trial court." The State insists that the district court's instruction on the presumption of innocence following the rebuttal was sufficient to remedy any error the prosecutor made in describing the presumption. According to Portillo,

however, the district court's jury instructions on the presumption of innocence "were not specific enough to undo the harm." We agree with Portillo.

It is true that the prosecutor's misstatement of the law on the presumption of innocence occurred three times within the State's rebuttal argument, which spans a little more than half a page of the six-page rebuttal and the 20-page total closing argument. But we conclude that the district court's jury instructions were not sufficient to remedy any prejudice the prosecutor's erroneous statement caused.[9] Importantly, the prosecutor made the challenged statement during rebuttal, so the prosecutor's statements on the presumption of innocence were part of the last argument that the jury heard before the district court gave the jury its final instructions. *See State v. Bustos*, 861 N.W.2d 655, 664–65 (Minn. 2015) (noting that " '[i]t can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case' " (quoting *Herring v. New York*, 422 U.S. 853, 862 (1975)) and that "[t]he Supreme Court has also labeled the closing argument the most important aspect of partisan advocacy").

---

[9] The State also argues that the lack of objection by Portillo should weigh against concluding that the prosecutor's error prejudiced him. Indeed, we have explained that defense counsel's failure to object has "weighed heavily" in our past decisions not to reverse in cases of prosecutorial error. *See, e.g.*, *State v. Washington*, 521 N.W.2d 35, 40 (Minn. 1994); *State v. Ives*, 568 N.W.2d 710, 713 (Minn. 1997). Those cases, however, precede our decision in *Ramey*, in which we articulated the modified plain-error standard that specifically applies to allegations of error in which defense counsel did not object at trial. *See* 721 N.W.2d at 297–98. Because the modified plain-error test that we articulated in *Ramey* applies precisely to unobjected-to allegations of prosecutorial error, we decline to again consider the lack of an objection by defense counsel as a factor suggesting a lack of prejudice to the defendant.

18

Moreover, although the district court's instruction on the presumption of innocence was a correct statement of the law, the instruction did not contradict or otherwise instruct the jury to ignore the prosecutor's misstatement that Portillo had already lost the presumption of innocence *before deliberations*. In other words, the district court's statement that "[t]he presumption remains with the defendant unless and until the defendant has been proven guilty beyond a reasonable doubt" does not obviously and clearly correct the prosecutor's erroneous statement that Portillo "has been proven guilty beyond a reasonable doubt. . . . [H]e no longer has that presumption of innocence."

On balance, although the prosecutor's misstatement may not have been in bad faith or pervasive, the State cannot meet its burden of showing that there is "no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Ramey*, 721 N.W.2d at 302 (citation omitted) (internal quotation marks omitted). The State's case against Portillo was not strong, the misstatement occurred at the end of closing argument just prior to jury instructions and deliberations, and the district court's instructions did not correct the prosecutor's misstatement of the presumption of innocence. Thus, a reasonable likelihood exists that the prosecutor's misstatement may have had a significant effect on the verdict of the jury. *See Estelle v. Williams*, 425 U.S. 501, 504 (1976) ("The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But this Court has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny.").

Finally, the dissent refers to the split verdict rendered at trial as evidence "that Portillo's substantial rights were not affected by the prosecutor's statements about the presumption of innocence during the rebuttal argument." *Infra* at D-8. The cited authorities on the role of a split verdict in the plain-error test, however, concern whether jurors were "unduly inflamed by the prosecutor's comments." *State v. Washington*, 521 N.W.2d 35, 40 (Minn. 1994) (quoting *State v. DeWald*, 463 N.W.2d 741, 745 (Minn. 1990)). Whether a defendant's substantial rights were affected by attacks on character in a closing argument is a quite different matter from an implication that a defendant no longer has a presumption of innocence, which this court has recognized as a "fundamental component of a fair trial under our criminal justice system." *Peterson*, 673 N.W.2d at 486. To excuse this prosecutorial error on the basis of a split verdict demeans the fundamental nature of that presumption, especially here where the balance of evidence was unclear. In the decisions cited by the dissent, the split verdict was not an independent factor in the plain-error analysis, but rather tilted the balance because other factors fell against the defendant. In *Washington*, for example, district court instructions and the strength of the State's case favored the State. 521 N.W.2d at 39–41. In *DeWald*, district court instructions were also sufficient to cure the defect in the prosecutor's conduct. 463 N.W.2d at 745.

The dissent also relies on the district court's jury instructions as a cure for prosecutorial mistake; that reliance is misplaced. As mentioned previously, the instructions given by the district court failed to properly counter the prosecutor's misstatement of the law. The jury instructions given by the district court were a generic recitation of

20

black-letter law and lacked sufficient specificity to cure that error. To put it more directly, the instructions never mention the prosecutorial error regarding the fundamental principle of the presumption of innocence and fail to tell the jury to disregard the prosecutor's statement that the defendant no longer was entitled to the presumption of innocence. Because the jury instructions did not correct the prosecutor's misstatement, and because the balance of the evidence was not clearly in favor of the State, the split verdict does not weigh against a finding of plain error affecting Portillo's substantial rights here.

D.

Having concluded that the prosecutor's misstatement of the law during the State's closing-argument rebuttal was a plain error that affected Portillo's substantial rights, we turn to the fourth prong of the modified plain-error analysis. This final prong requires that we "assess[] whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Ramey*, 721 N.W.2d at 302.

Portillo argues that failing to address the error in this case would "perpetuate the perception of most Minnesotan citizens of color like Portillo that the criminal justice system does not treat them fairly" and "send a message to prosecutors that they may abdicate their roles as ministers of justice," allowing them to "without repercussion . . . make arguments that strike at the heart of a defendant's right to a fair trial." The State counters by arguing that the real injustice would be "[l]etting [Portillo] escape responsibility" for his alleged criminal acts. The State highlights that this prosecution involves serious allegations of sexual misconduct against a child and argues that "letting [Portillo] get away with this crime . . . would be a miscarriage of justice" itself.

21

Although a reversal and remand would undoubtedly cause distress to the now 26-year-old complainant, J.G., because we remand for further proceedings consistent with this opinion, the State is incorrect that Portillo would "escape responsibility" for his alleged criminal acts. The pivotal question is whether addressing the prosecutorial error will serve to enforce the constitutional protections afforded to all criminal defendants.

For example, this state's courts have declined to reverse in the interest of fairness and integrity of judicial proceedings when a defendant did not personally waive his right to a jury trial on an element of a crime, but "[r]eversal and remand would likely result in either a valid waiver and identical evidence before a jury charged with the same instructions or a trial in which the jury is informed of [prior bad acts] and is charged with the elevated offenses." *State v. Kuhlmann*, 780 N.W.2d 401, 406 (Minn. App. 2010). We have also declined to reverse when the district court gave incorrect jury instructions on self-defense because the result would have been a conviction even if the court had given the correct instructions. *State v. Griller*, 583 N.W.2d 736, 742 (Minn. 1998).

We have, however, found that the fairness and integrity of judicial proceedings would be adversely affected in cases where "the State charges a defendant with an additional offense after the defendant has waived his or her right to a jury trial" without obtaining a new waiver because "there [was] a reasonable likelihood that but for the district court's error he would not have waived his constitutional right to a jury trial" on a much more serious offense. *State v. Little*, 851 N.W.2d 878, 886–87 (Minn. 2014). We have also concluded that the fairness and integrity of judicial proceedings would be adversely affected when the jury instructions misstated the law. *See State v. Baird*, 654 N.W.2d 105,

22

114 (Minn. 2002). And we have done the same when the district court limited defense counsel's final argument regarding the State's burden of proof and improperly instructed the jury. *See Bustos*, 861 N.W.2d at 665.

Ultimately, we conclude that the prosecutorial error here must be addressed to ensure the fairness and integrity of judicial proceedings. The State, as noted above, has failed to show that there is no reasonable likelihood that the prosecutor's misstatement did not affect the jury's verdict, and the error in misstating the presumption of innocence strikes at "that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law.' " *Winship*, 397 U.S. at 363 (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)). "[W]hen there is a reasonable likelihood that but for the . . . error," the result would be different, affirming Portillo's conviction would "adversely affect the public's confidence in the fairness and integrity of judicial proceedings." *Little*, 851 N.W.2d at 886. "Fairness requires that [a defendant] be given an opportunity to present his account . . . to a jury under the proper instructions." *Baird*, 654 N.W.2d at 114. The uncorrected, erroneous statement that Portillo was not entitled to the presumption of innocence as the jury deliberated deprived Portillo of the ability to present his defense and have the charges against him considered under the proper, correct instructions. "[L]eft unchecked," such errors "would also have a substantial and deleterious effect on future trials" and "undercut[] the historic standard of proof imposed on the State in criminal trials." *Bustos*, 861 N.W.2d at 665 n.7. Consequently, Portillo is entitled to a new trial.

**CONCLUSION**

For the foregoing reasons, we reverse the decision of the court of appeals and remand for further proceedings consistent with this opinion.[10]

Reversed and remanded.

McKEIG, J., took no part in the decision of this case.

PROCACCINI, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

---

[10]     On June 9, 2023, the State submitted a citation of supplemental authority under Minn. R. Civ. App. P. 128.05.   The supplemental authority was offered to support assertions made at oral argument as to whether the prosecutor's error was plain, whether the district court's instructions cured the error, the applicable standard of review, the relevance of a lack of objection, the intentionality of prosecutorial error, and the relevance of a split verdict in our analysis.   On June 12, 2023, Portillo moved to strike the State's citation of supplemental authority as improper surrebuttal.   Portillo's motion to strike is denied.

DISSENT

CHUTICH, Justice (dissenting).

I agree with the court that the presumption of innocence is a fundamental bedrock

principle at the core of our criminal justice system. *See In re Winship*, 397 U.S. 358, 363

(1970). I also agree that a clear assertion by a prosecutor that a criminal defendant has lost

the presumption of innocence before the start of jury deliberations is an error. *See Merrill*

*v. United States*, 338 F.2d 763, 768 (5th Cir. 1964). But I disagree with the court that the

prosecutor in this case committed a plain error during the unobjected-to rebuttal argument.[1]

I further believe that even if the prosecutor committed a plain error, it did not affect the

substantial rights of appellant Christian Portillo. Accordingly, I respectfully dissent.

Ordinarily, a defendant's failure to object to an error during the trial forfeits

appellate consideration of the issue. *State v. Ramey*, 721 N.W.2d 294, 297 (Minn. 2006).

But to ensure that appellate courts retain the power to correct prosecutorial errors even

when the defendant does not object or otherwise seek any corrective action during the trial,

we established a modified plain-error test in *Ramey*. *Id.* at 302.

Under the *Ramey* test, "the defendant has the burden to demonstrate that the

misconduct constitutes (1) error, (2) that was plain." *State v. Matthews*, 779 N.W.2d 543,

---

[1]    The transcript shows that defense counsel vigorously represented Portillo throughout the trial, making successful motions to exclude evidence and frequent objections to questions posed by the State. In fact, in her closing argument, defense counsel acknowledged the highly contentious nature of this trial, telling the jury that "we've been battling back and forth for days" and are "warriors of words." That defense counsel did not object to the prosecutor's statements during rebuttal argument—or ask the district court to allow a surrebuttal argument after hearing the statements—strongly suggests that the statements were not viewed as erroneous or problematic in real time.

551 (Minn. 2010). A plain error is a " 'clear' or 'obvious' " error that "contravenes case law, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302 (citation omitted). Once plain error is shown, the State then bears the burden of demonstrating that "there is no 'reasonable likelihood that the absence of the misconduct would have had a significant effect on the verdict of the jury.' " *Id.* (citation omitted).

Notably, a negative answer to any one of the three parts of the plain-error doctrine may end our analysis and a defendant's quest for relief. *See, e.g.*, *State v. Coleman*, 957 N.W.2d 72, 83 (Minn. 2021) (concluding that the alleged prosecutorial error did not affect the defendant's substantial rights); *State v. Jones*, 753 N.W.2d 677, 689 (Minn. 2008) (concluding that the alleged prosecutorial error was not plain); *State v. Ihle*, 640 N.W.2d 910, 917–19 (Minn. 2002) (finding no prosecutorial error). If the first three prongs of the test are satisfied, then the reviewing court must "assess[] whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Ramey*, 721 N.W.2d at 302.

Applying the *Ramey* test here, I believe that the prosecutor's brief statements during unobjected-to rebuttal argument did not amount to a plain error. In *State v. Young*, we were presented with a similar set of facts and found no plain error committed by the prosecutor. 710 N.W.2d 272 (Minn. 2006). In *Young*, during the State's closing argument, the prosecutor said, "When the trial began, the Court told you that that young man right there is an innocent man. He was. Until the defense stood up and rested. . . . He's no long[er] an innocent man." *Id.* at 280. In rejecting the defendant's argument that this statement "amounted to a claim that Young was not entitled to the presumption of innocence when

D-2

the jurors began their deliberation," we concluded that "[r]ead in context . . . the prosecutor's argument appears to be that the [S]tate had produced sufficient evidence of Young's guilt to overcome the presumption of innocence, not that he was not entitled to the presumption in the absence of proof beyond a reasonable doubt." *Id.* at 280–81.

Similar to *Young*, when the rebuttal argument here is considered in the context of the entire closing argument, the challenged statements sought to convince the jury that the State had produced sufficient evidence of Portillo's guilt to *overcome* the presumption of innocence, not that Portillo was not *entitled* to the presumption itself. In the State's initial closing argument spanning 14 pages of the trial transcript, the prosecutor meticulously focused on "the elements that the [S]tate must prove to you beyond a reasonable doubt" and then connected the evidence presented to each element. The prosecutor stressed to the jury that the case is "largely about your determining the credibility of the witnesses who have testified in this case." She ended her closing argument by again referencing the State's burden of proof and crystalizing the decision awaiting the jury, stating: "If you believe [J.G.], this case has been proven beyond a reasonable doubt. Nothing more is needed if you believe her."

Defense counsel then addressed the jury by emphasizing and accurately describing the presumption of innocence: "Presumption of innocence means you stand by [Portillo's] side, whether you like it or not, unless and until you hear, consider, look at all of the evidence, consider the law, and unless and until you get to proof beyond a reasonable doubt. That's what it means." Defense counsel next discussed several inconsistencies in the evidence and suggested that J.G. incorrectly believed that Portillo assaulted her because of

"confabulation." Defense counsel returned again to the presumption of innocence and said, "Before I sit down, I want to remind you what it takes to leave the side of my client and find him guilty." Defense counsel then described in detail the various lower standards of proof that exist in the law to underscore the heavy burden that the State carried during the trial to prove her client guilty beyond a reasonable doubt.

In her short and unobjected-to rebuttal argument, the prosecutor addressed the presumption of innocence in 10 lines of transcript or about one-half of a transcript page. The prosecutor began by highlighting the State's heavy burden of proof and correctly describing the presumption of innocence:

> The presumption of innocence comes with an individual accused, unless and until the [S]tate proves its case beyond a reasonable doubt. [Defense counsel] correctly told you that. But it leaves him when the [S]tate has proven its case beyond a reasonable doubt.[2]

The prosecutor followed up by saying that Portillo "no longer has that presumption of innocence" three times, but in between each statement was the necessary context: "You've heard all of the evidence. You've heard all of the [S]tate's case against Mr. Portillo." "He

---

[2] This description is analogous to the language used to articulate the presumption of innocence in the model jury instruction:

> The defendant is presumed innocent of the charge made. This presumption remains with the defendant unless and until the defendant has been proven guilty beyond a reasonable doubt. That the defendant has been brought before the court by the ordinary processes of the law and is on trial should not be considered by you as in any way suggesting guilt. The burden of proving guilt is on the State. The defendant does not have to prove innocence.

10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 3.02 (6th ed. 2015).

has been proven guilty beyond a reasonable doubt. We've gone through those elements. You'll be able to talk and consider each other's thoughts and the information you heard throughout the course of the case . . . ."

The prosecutor ended her rebuttal argument by stating, "if you believe [J.G.], the [S]tate has proven its case beyond a reasonable doubt. Find Mr. Portillo guilty as charged." Just as the court concluded in *Young*, I believe that, in context, the prosecutor's statement did *not* suggest that Portillo "was not entitled to the presumption in the absence of proof beyond a reasonable doubt." 710 N.W.2d at 281. Instead, the prosecutor's statement suggested that the State had met its burden of proof in this case.[3]

I wholeheartedly agree that prosecutors should strive to exercise caution when explaining the presumption of innocence and "adopt some definition which has already received the general approval of the authorities." *Id.* (internal quotation marks omitted) (quoting *State v. Bohlsen*, 526 N.W.2d 49, 50 (Minn. 1994)). But given our decision in *Young* that the prosecutor did not commit a plain error, we should likewise find no plain error here.

Furthermore, even if the prosecutor's statements during the unobjected-to rebuttal argument could be distinguished from *Young* and considered a plain error, I disagree with the court that Portillo's substantial rights were impacted. When evaluating whether a reasonable likelihood exists that a prosecutorial error significantly impacted the verdict of

---

[3]    In addition to not objecting to the rebuttal argument, defense counsel did not request a defense rebuttal under Minnesota Rule of Criminal Procedure 26.03, subd. 12(k), which allows counsel to respond directly to a "misstatement of law . . . or an inflammatory or prejudicial statement."

the jury, "we consider the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007).

The court concedes that the prosecutorial error in this case was not pervasive, and I agree. The challenged statements by the prosecutor consisted of just three sentences in about a half-page of the State's six-page rebuttal argument and 14 transcript pages of the closing argument. *See State v. Epps*, 964 N.W.2d 419, 424 (Minn. 2021) (holding that four sentences of the prosecutor in the 26 pages of transcript that comprised the closing argument was "brief and not repeated"). And as set forth above, the statements were made during the rebuttal argument after both the prosecutor and defense counsel had correctly and in detail explained the presumption of innocence to the jury and the high burden of proof that the State needed to meet to prove its case against Portillo. In my view, the jury fully understood the presumption of innocence held by Portillo, and the prosecutor's three sentences during rebuttal did not change that.

Moreover, the district court accurately described the presumption of innocence to the jury in the final instructions that were given *immediately after* the prosecutor's rebuttal argument, stating in relevant part:

> The defendant is presumed innocent of the charges made. . . . The presumption remains with the defendant unless and until the defendant has been proven guilty beyond a reasonable doubt. That the defendant has been brought before the court by the ordinary processes of the law and is on trial should not be considered by you as in any way suggesting guilt. The burden of proving guilt is on the [S]tate. The defendant does not have to prove innocence.

Even if the prosecutor's statements had in any way confused some members of the jury, the district court's clear final instructions on the presumption of innocence and the State's burden of proof restored the clarity. And we must presume that the jurors followed the district court's instructions. *State v. Steward*, 645 N.W.2d 115, 122 (Minn. 2002).

Even though the prosecutor's statements were not pervasive, the court still concludes that, on balance, the prosecutor's statement likely impacted the verdict because of the weakness of the State's evidence against Portillo. I disagree.

The conviction in this case turned largely on the credibility of the female victim, who was sexually abused by Portillo from when she was 11 years old until the age of 16 or 17. J.G., age 24 at the time of the jury trial, recounted the sexual abuse by Portillo in detail. Defense counsel vigorously and thoroughly cross-examined J.G. about inconsistencies in her reports to law enforcement. Nevertheless, the jury's verdict shows that it found J.G. to be a credible witness, and this credibility determination is entitled to deference. *See State v. Robinson*, 921 N.W.2d 755, 761 (Minn. 2019).

Portillo contends that the evidence supporting the jury's guilty verdict is not strong because the State "failed to present any evidence corroborating J.G.'s testimony." We have long recognized that "in a prosecution for criminal sexual conduct the complainant's testimony need not be corroborated." *State v. Myers*, 359 N.W.2d 604, 608 (Minn. 1984); *see also* Minn. Stat. § 609.347, subd. 1 (2022) (stating that in a prosecution for criminal sexual conduct, the testimony of a victim need not be corroborated). In these types of intrafamilial criminal sexual assault cases by an adult upon a child, the absence of corroborating witnesses is not atypical. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 60

(1987) ("Child [sexual] abuse is one of the most difficult crimes to detect and prosecute, in large part because there often are no witnesses except the victim."). To suggest that a criminal sexual conduct case is weak simply because no third person observed the sexual abuse and assault is simply inaccurate. A complainant's testimony is key to the strength of such a case, and a case involving a credible complainant always has merit.[4] The victim's testimony here presented the jury with convincing and credible evidence that Portillo was guilty of the criminal sexual conduct offense.

Tellingly, I believe that the split verdict delivered by the jury here shows that Portillo's substantial rights were not affected by the prosecutor's statements about the presumption of innocence during the rebuttal argument. In *State v. Washington*, for example, we held that "[w]here the jury has acquitted the appellant of some counts, but convicted the appellant of others, [the court] view[s] the verdicts as an 'indica[tion] that the members of the jury were not unduly inflamed by the prosecutor's comments.'" 521 N.W.2d 35, 40 (Minn. 1994) (quoting *State v. DeWald*, 463 N.W.2d 741, 745 (Minn. 1990)). In *Washington*, the defendant alleged that the prosecutor committed misconduct by improperly referring to his character during the closing argument to inflame the passions of the jury. *Id.* at 38. In applying the modified plain-error standard of review, we concluded that any misconduct by the prosecutor did not affect the defendant's substantial rights because of the lack of an objection, the trial court's instructions to the

---

[4]    Notably, defense counsel seemed to acknowledge J.G.'s credibility when counsel asserted that J.G. had confabulated early sexual abuse by an uncle with sexual touching by Portillo. Counsel told the jury at the beginning of her closing argument that "[i]t is obvious [J.G.] is a survivor of abuse."

jury that ameliorated the concerns, the acquittal on some but not all counts, and "the nature of the non-objectionable part" of the closing, as well as the strength of the case against the defendant. *Id.* at 39–41.

Similarly, in *DeWald*, the prosecutor made the comment "should we care?" to appeal to jurors' sympathy and brought up the defendant's past convictions in closing argument on several occasions. 463 N.W.2d at 745. We concluded that any error by the prosecutor did not impact the defendant's substantial rights because of "the trial court's ample cautionary instructions" and because "the jury acquitted defendant of one count of first degree murder, indicating that the members of the jury were not unduly inflamed by the prosecutor's comments."[5] *Id.* at 745. *See also State v. Glaze*, 452 N.W.2d 655, 662 (Minn. 1990) (concluding that it is "extremely unlikely" that the prosecutor's improper remarks "influenced the jury" after noting that "the remarks were isolated and not representative of the closing argument when reviewed in its entirety," the evidence was overwhelming, and the jury acquitted Glaze of three counts of premeditated murder).

---

[5]     Split verdicts have been considered in relation to claims of prejudice by defendants in other jurisdictions. *See, e.g.*, *Skilling v. United States*, 561 U.S. 358, 383 (2010) ("Finally, and of prime significance, Skilling's jury acquitted him of nine insider-trading counts. . . . It would be odd for an appellate court to presume prejudice in a case in which the jurors' actions run counter to that presumption."); *United States v. Arzola-Amaya*, 867 F.2d 1504, 1514 (5th Cir. 1989) ("The jury's ability to discern a failure of proof of guilt of some of the alleged crimes indicates a fair minded consideration of the issues and reinforces our belief and conclusion that the media coverage did not lead to the deprivation of appellants [sic] right to an impartial trial."); *United States v. Mann*, 685 F.3d 714, 719–20 (8th Cir. 2012) (considering the appellant's claim that she was denied her right to an impartial jury under plain-error review "in light of the significant fact of her acquittal on the § 1623 charge").

In this case, the jury split its verdict, finding Portillo guilty of one count of second-degree criminal sexual conduct but acquitting him of the other count. Consistent with the reasoning in *Washington*, *DeWald*, and *Glaze*, the jury's split verdict makes it extremely unlikely that the prosecutor's statements during the rebuttal affected the jury's verdict. In fact, the acquittal on one count strongly suggests that the jury understood that Portillo's presumption of innocence had not vanished before it started deliberations. The split verdict certainly shows that the jury was not unduly inflamed by the prosecutor's remarks. Overall, the State has shown that there is "no reasonable likelihood" that the absence of the three challenged sentences in the prosecution's rebuttal argument " 'would have had a significant effect on the verdict of the jury.' " *Ram*ey, 721 N.W.2d at 302 (citations omitted).

In sum, when the closing arguments are considered as a whole, the prosecutor did not commit a plain error during the unobjected-to rebuttal argument. Even assuming a plain error occurred, Portillo's substantial rights were not affected by the prosecutor's statements. Accordingly, I dissent.


MOORE, III, Justice (dissenting).

I join in the dissent of Justice Chutich.